CRAVER *v.* UNION FIDELITY LIFE INS. CO.*

(No. A-262679—Decided April 10, 1973.)

Common Pleas Court of Hamilton County.

*Mr. Sidney J. Silvian*, for plaintiff.
*Messrs. McIntosh, McIntosh & Knabe* and *Mr. Robert G. McIntosh*, for defendant.

BETTMAN, J. Plaintiff's action herein seeks a declaratory judgment as to the meaning of a health and accident insurance policy and damages. It was stipulated by the

---

*An appeal has been taken to the Court of Appeals.

16

parties that plaintiff's Exhibit A is the policy issued to plaintiff by defendant and that plaintiff's Exhibit C is the advertisement run in a Cincinnati daily newspaper pursuant to which plaintiff purchased the policy. It was further stipulated that plaintiff's spouse was confined in a hospital for a period of 28.14 weeks, and that defendant paid plaintiff $500 for five weeks of such confinement and refused to pay under the policy issued by it for the balance of 23.14 weeks. It was further stipulated that the 23.14 weeks of confinement was a result of conditions of plaintiff's spouse pre-existing the date of issuance of the policy.

The policy, plaintiff's Exhibit A, on the first page under the large caption "WEEKLY HOSPITAL BENEFIT," states:

"When injury or sickness necessitates hospital confinement as a resident patient, we will pay at the rate of the Weekly Indemnity designated in the Policy Schedule for the period of hospital confinement, beginning with the first day of confinement and not exceeding one-hundred (100) weeks as a result of any one injury or sickness."

In the middle of page 2, under the caption "DEFINITIONS," the fifth of eight paragraphs states:

" 'Sickness' means sickness or disease resulting in hospital confinement where such sickness or disease is first manifested after the effective date of the policy and while the policy is in force."

Also on page 2, under the heading "RECURRENT CONDITIONS," the policy states:

"If benefits have become payable under this policy and you are again confined to the hospital due to the same or a related injury or sickness, the subsequent period of hospital confinement shall be considered a continuation of the prior period, unless full normal activities were resumed for at least six (6) months between such confinements, in which event the subsequent period of hospital confinement shall be considered as resulting from a different injury or sickness."

Under the caption "EXCLUSIONS" on page two, the policy states only:

"We will not pay you benefits for any loss caused by or resulting from: (1) war or any act of war; (2) any mental disorder; (3) pregnancy, childbirth or miscarriage or complications therefrom"

On page 3 of the policy, under the general heading "GENERAL PROVISIONS," the policy states in a paragraph captioned "TIME LIMIT ON CERTAIN DEFENSES":

"No claim for loss incurred or disability (as defined in this policy) commencing after two (2) years from the effective date of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy."

This policy was purchased by plaintiff in response to defendant's advertisement (plaintiff's Exhibit C). This advertisement starts out in oversized lettering "You get $100 a week whenever you go to the hospital!":

"At last, here is a plan that actually pays you . . . EXTRA CASH from the first day in the hospital."

On the second page, also in very large letters, it says: "You get $100.00 a week tax-free . . . without any qualifications whatsoever."

And then in smaller letters the following appears:

"Wouldn't it be comforting to know these financial problems could be solved by your extra cash plan? This plan gives you tax-free extra cash from the first day in the hospital for up to one hundred full weeks."

Then, on page 3, also in large letters, it says:

"You can be secure, knowing that when hospitalization is necessary, you will receive: $100.00 a week tax-free when you go to the hospital; $100.00 a week from the first day in the hospital."

Finally, on page 5, in small print, the advertisement states:

"These are the only exclusions! The new Union Fidelity 'Extra Income Hospital Plan' has No WAITING PERIOD. It covers you immediately for every kind of sickness and accident except, of course, hospitalization caused

18

by mental disorders; act of war; pregnancy, childbirth or miscarriage; or care provided in a government hospital. What's more, if you've been sick before, or if you are sick now, you'll be covered even for this condition after your policy has been in effect for only 2 years. EVERYTHING ELSE IS COVERED.''

The principle is long established that where an insurance contract is ambiguous it is to be construed most strongly against the company which drew it. The policy in this case provides that the defendant Company will pay $100.00 per week when injury or sickness necessitates hospital confinement. It defines sickness by saying that means sickness or disease resulting in hospital confinement where such sickness or disease is first manifested after the effective day of the policy and while the policy is in force. The company contends that this definition of sickness means that any hospitalization due to a condition of the patient existing prior to the policy is not covered. We cannot accept this interpretation.

It would have been a simple thing for the policy to say: ''No coverage is provided for any hospitalization which was due to a condition of the plaintiff which existed prior to the effective date of the policy.'' It did not say this. It said: ''where such sickness or disease is first manifested after the effective date of the policy.'' This could perfectly well mean that if you were sick at the time the policy was taken out, that sickness would not be covered, but if you got sick sometime after the policy went into effect, you would be covered. In our judgment this is a patent ambiguity which must be interpreted against the defendant company.

It must be borne in mind that this type of policy is designed to be sold to the ordinary person. In fact, the policy, according to the advertisement, could be put into effect upon the payment of $1. The words of the policy must, therefore, be given their ordinary meaning to an average person not the meaning they might have to the highly wary or to someone skilled in the law. Furthermore in interpreting the contract one must bear in mind the

thrust of the advertising brochure. Although the contract provides: "This policy, including endorsements and attached papers, if any, constitute the entire contract of insurance," the words of the advertising brochure put out by the Company should be considered as they affect the thinking of an ordinary person as to the meaning of the words in the policy itself. For that reason the constantly reiterated language in the advertising brochure that $100.00 a week will be paid from the first day the policyholder enters the hospital must be borne in mind.

Our conclusion therefore is that the language of the policy covers any new hospitalization for a sickness which manifested itself after the date of the policy and that plaintiff is therefore entitled to coverage at the rate of $100 per week for the 23.14 weeks in which his wife was in the hospital.

In addition to being entitled to recover under the terms of the policy, we are of the opinion that plaintiff would be entitled to recover on grounds of false representations. Through the design, layout, emphasis, position of language and use of language, defendant intentionally created in the mind of plaintiff the idea that he was getting a policy of insurance in exchange for his premium which would insure him for any hospitalization. This representation was false; it was known to be false; it was made purposely with the intention that plaintiff rely on it, and plaintiff did in fact rely on it to his damage. Under such circumstances plaintiff is entitled to recovery based on what he would have received had the policy been as represented.

In our opinion the advertising brochure was in direct violation of R. C. 3923.16 in that the advertising copy, practice and plan of solicitation were materially misleading and deceptive and by implication transmitted information in such manner that a prospective applicant would be misled thereby to his material damage. Although the sanction for a violation of R. C. 3923.16 is a penalty set forth in that Chapter, by that section the Ohio Legislature set a standard of conduct in the sale of health and accident policies the

substantial violation of which constitutes fraudulent or false representations to the purchaser.

For the two reasons set out: (1) that the contract is ambiguous and the ambiguity must be interpreted against the company, and (2) even if the contract be interpreted to exclude the illnesses of plaintiff's wife due to preexisting conditions, plaintiff was induced to enter into the contract by false representations; plaintiff is entitled to recover for the 23.14 weeks during which his wife was hospitalized, for which defendant has refused to pay. There being no prayer for punitive damage, plaintiff cannot recover his attorney fees. .

*Judgment for plaintiff.*