NOVAK, Appellant,

v.

AMERICAN COMMUNITY MUTUAL INSURANCE COMPANY, et al., Appellees.

[Cite as *Novak v. Am. Community Mut. Ins. Co.* (1998), 129 Ohio App.3d 629.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72720.

Decided Aug. 31, 1998.

**630**

*Cassidy, Reiman & Harbarger* and *Timothy G. Dobeck,* for appellant.

*Baker & Hostetler, Charles J. French III* and *Chris Bator; Benesch, Friedlander, Coplan & Aronoff, Peter C. Elliott* and *Mariann E. Butch; Law Office of Daniel W. Dreyfuss* and *Michael T. Williams; Quandt, Giffels & Buck Co., L.P.A.* and *Robert J. Gerlach,* for appellees.

---

JOHN T. PATTON, Judge.

Plaintiff-appellant Adelbert Novak ("plaintiff") appeals the order of the trial court granting summary judgment in favor of defendants-appellees American Community Mutual Insurance Company ("ACMIC"), Howard Cooper ("Cooper"), and Henry Reed ("Reed"). Plaintiff claims that the exclusion in the insurance policy denying him coverage is ambiguous and unconscionable.

In the summer of 1994, plaintiff was seeking health insurance. He contacted several companies, but each time he was denied coverage because of his prior carotid artery disease. He subsequently met with Reed, an independent insurance agent, to discuss his options. Reed evaluated plaintiff's needs and suggested a short-term policy from ACMIC.[1] Although Reed is not licensed to sell ACMIC polices, he obtained an application from Cooper, who is a licensed agent. Plaintiff and Reed discussed the policy and filled out the application and sent it to ACMIC. Thereinafter plaintiff obtained health insurance from ACMIC. The policy was activated on August 8, 1994 and expired on December 31, 1994.

On December 23, 1994, plaintiff visited Dr. Effron, a cardiologist, at University Hospitals of Cleveland. During this visit, plaintiff complained of chest pain, shortness of breath, and soreness in his left breast. Plaintiff indicated to Dr. Effron that he had been experiencing these symptoms since October 1994. Based on his examination of plaintiff, Dr. Effron recommended a diagnostic coronary arteriography ("DCA"), i.e., a heart catheterization, so he could make a definite diagnosis to determine whether plaintiff had coronary artery disease.

Approximately one week later, on January 1, 1995, plaintiff activated his second health insurance policy with ACMIC. On January 12, 1995, the DCA was performed on plaintiff and confirmed the diagnosis of coronary artery disease. Based on this diagnosis, Dr. Effron recommended coronary artery bypass surgery. Plaintiff underwent the bypass surgery on January 18, 1995.

After conducting an investigation, ACMIC determined that plaintiff's claims for treatment of coronary artery disease were not covered under the second policy because the condition of coronary artery disease preexisted the activation of the second policy on January 1, 1995. The second policy defines preexisting condition as "an illness, disease, accidental bodily damage or loss that first appears (makes itself known) before the Effective Date." As a result, ACMIC denied plaintiff coverage.

Six months later, plaintiff filed a complaint against ACMIC, complaining that (1) the exclusion portion of ACMIC's health insurance policy was unconscionable, (2) ACMIC breached its contract with him, and (3) ACMIC acted in bad faith in denying his claim. The complaint also included a negligence claim against Cooper, complaining that Cooper "was under a duty to obtain a truthful and accurate response to Plaintiff's inquiry of whether the 1991 carotid artery disease would affect his receipt of policy benefits." Subsequently, plaintiff amended his

---

1.  A policy which is called "short term" is essentially a gap filler, or a policy which provides a person with health insurance for a short period until a primary policy begins. Here, plaintiff signed two short-term policies, which act as separate and distinct policies and are distinguishable from merely renewing an existing policy.

complaint and asserted a claim against Reed, stating that Reed's sale of ACMIC policies was negligent because he was not licensed to do so and because he failed in his "duty to obtain a truthful and accurate response to Plaintiff's inquiry of whether the 1991 carotid artery disease would affect his receipt of policy benefits."

All parties filed motions for summary judgment. The trial court granted both Reed's and Cooper's motions, over the objection of plaintiff, but denied ACMIC's motion. However, upon reconsideration, the trial later granted ACMIC's motion for summary judgment. Plaintiff timely filed his notice of appeal and submits three assignments of error.

In his first assignment of error, plaintiff states as follows:

"The trial court erred in granting summary judgment to ACMIC because the policy exclusion at issue herein is ambiguous and therefore unenforceable."

First, plaintiff argues that when an ambiguity arises in an insurance policy, it must be construed against the drafter of the policy language, in this case ACMIC. *DeMatteis v. Am. Community Mut. Ins. Co.* (1992), 84 Ohio App.3d 459, 462, 616 N.E.2d 1208, 1209–1210. Second, plaintiff claims that the policy exclusion ambiguously provides that an "illness or disease * * * that first appears (makes itself known) before the effective [policy] date." Plaintiff claims this language is ambiguous because the phrase " 'first appears' has many conflicting meanings and conflicts with a disease or illness which 'makes itself known.' " He also argues that the first appearance of a disease can signal the beginning of a disease or conversely it also "contemplates the appearance of a disease such as the *disease* becoming known or manifest." This language, plaintiff claims, requires that the disease make itself known, identified, or diagnosed.

Regarding the policy ambiguity, plaintiff cites *Craver v. Fid. Life Ins. Co.* (1973), 35 Ohio Misc. 15, 64 O.O.2d 147, 298 N.E.2d 918, affirmed in *Craver v. Union Fid. Life Ins. Co.* (1973) 37 Ohio App.2d 100, 66 O.O.2d 170, 307 N.E.2d 265. In the initial *Craver*, the court held that the policy exclusion stating "such sickness or disease is first manifested after the effective date of the policy" was patently ambiguous to the "average person" because it could mean that if a person were sick at the time a policy was taken out he or she was not covered, yet if he or she became sick after the policy went into effect, he or she was covered. *Id.* at 18, 64 O.O.2d at 148–149, 298 N.E.2d at 920. He also cites *Sheeler v. Ohio Bur. of Workers' Comp.* (1994), 99 Ohio App.3d 443, 450, 651 N.E.2d 7, 12, for the proposition that a preexisting condition makes itself known to an individual when the individual "knew of the condition due to prior diagnosis, or was aware of the problem."

Applying this argument and law to the instant case, plaintiff contends that he experienced chest pains prior to obtaining the second policy, but he had not been diagnosed as suffering from coronary artery disease and hence he did not know that he had the disease until the catheterization, which occurred after the activation of the second policy. Thus, he claims that he should have been provided coverage by ACMIC because he did not know or had not become aware of the disease until after the second policy was activated.

ACMIC counterargues that a provision in an insurance contract excluding preexisting conditions from coverage is valid and enforceable. It claims that a disease "first appears (makes itself known)" when there is a distinct symptom or condition from which one knowledgeable in medicine can, with reasonable accuracy, diagnose the illness. Thus, the disease itself does not have to be diagnosed before it manifests but rather symptoms may be indicative of the presence of a disease. In support, ACMIC cites *Cardamone v. Allstate Ins. Co.* (1977), 49 Ill.App.3d 435, 7 Ill.Dec. 299, 364 N.E.2d 460, where a woman was denied coverage because symptoms manifested themselves one day before the policy's effective date. The court held that it was clear, based on the symptoms and not on a medical diagnosis made after the effective date, that the woman's condition could have been diagnosed before the activation of the policy and thus coverage was properly denied.

ACMIC argues that plaintiff's chronic coronary artery disease could have been diagnosed with reasonable medical certainty on December 23, 1994. ACMIC maintains that plaintiff admitted to Dr. Effron on December 23, 1994 that he had been experiencing symptoms consistent with coronary artery disease since October 1994, precluding the argument that his coronary artery disease first manifested itself with its official diagnosis on January 12, 1995. Therefore, ACMIC claims, it properly denied plaintiff coverage because he had a preexisting condition that manifested itself before activation of the second short-term policy.

Under Civ.R. 56, summary judgment is appropriate when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."

This court reviews the lower court's granting of summary judgment *de novo*. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157. Moreover, it is well established that construction of contracts is a matter of law to be resolved by the court. *Lovewell v. Physicians Ins. Co. of Ohio* (1997), 79 Ohio St.3d 143, 144, 679 N.E.2d 1119, 1120–1121.

■ The policy provision at issue which pertains to preexisting conditions excludes from coverage "an illness, disease, accidental bodily damage or loss that appears (makes itself known) before the Effective Date"

The first issue to address is whether the language of the insurance policy was ambiguous.

In *United States Fire Ins. v. Athletic Assn.* (1991), 71 Ohio App.3d 760, 764, 595 N.E.2d 418, 420, the court confronted an interpretation of an insurance policy provision and stated:

"The words in a policy must be afforded their plain and ordinary meaning, 'and only where a contract of insurance is ambiguous and therefore susceptible [of] more than one meaning must the policy language be liberally construed in favor of the claimant who seeks coverage.' *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88. Although any exclusion from liability must be clear and exact to be given effect, *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 543 N.E.2d 488, the rule of liberal construction of an insurance policy should not be utilized to create an ambiguity in a policy when none, in fact, exists. *Burris, supra.*"

In plaintiff's deposition testimony, he stated that Cooper told him that his prior carotid artery disease was not covered because it is a preexisting condition and that he understood that the short-term policy would not provide coverage for preexisting conditions. Thus, plaintiff understood the meaning of the policy exclusion to mean that conditions which arise before the activation of the short-term policy will not be covered by the policy. The language of the provision is clear and not ambiguous.

■ The second issue to be addressed is whether a preexisting condition "first appears (makes itself known)" by symptoms which are indicative of the condition or a specific diagnosis of the condition by a doctor. We find the latter argument more persuasive than the former.

Plaintiff informed Dr. Effron on December 23, 1994 that he had been experiencing chest pain, shortness of breath, and soreness in his left breast since October 1994. After examining plaintiff, Dr. Effron suggested that plaintiff undergo a catheterization because "the likelihood of coronary disease was sufficiently high and his health was otherwise sufficiently satisfactory that he would most benefit from a definitive diagnosis via an invasive technique." Dr. Effron stated that it would have been his practice to tell a patient with the same symptoms as plaintiff that the symptoms were consistent with a diagnosis of coronary artery disease.

The fact that plaintiff visited Dr. Effron indicates that plaintiff was aware that he had a specific health problem. The subsequent examination by Dr. Effron and

suggestion that he undergo a catheterization also indicates that plaintiff was aware that he had a specific medical problem. Although it is true that an exact diagnosis was not made until after activation of the second policy, Dr. Effron did state that it was his practice to inform patients with plaintiff's symptoms that the symptoms were consistent with a diagnosis of coronary artery disease.

Based on the symptoms plaintiff experienced, the fact that he visited a doctor because of the severity of the symptoms, an examination by a doctor revealing plaintiff's symptoms were consistent with a diagnosis for coronary artery disease, we find that coronary artery disease was made known or appeared to plaintiff before the activation of the second short-term policy.

Regarding *DeMatteis*, with facts very similar to the instant case, we find it to be distinguishable. In *DeMatteis*, the plaintiff was denied coverage for treatment which occurred after his short-term policy was activated. The insurance company claimed that his condition was preexisting because it was chronic, *i.e.*, always present. The primary issue then was whether DeMatteis's condition was chronic or not. The court held that it was not and reversed the trial court's granting of summary judgment in favor of the insurance company.

In contrast, in the instant case the condition arose before the short-term policy was activated. There were no issues concerning whether the condition was chronic or not. The instant case focuses on a nonchronic condition which arose a few months before activation of the short-term policy. Moreover, we find the reasoning in *Goshorn v. Hosp. Care Corp.* (1989), 46 Ohio App.3d 47, 48, 545 N.E.2d 930, 931–932, to be more persuasive. The court reasoned that an unknown condition was one that "had not manifested symptoms," implying that a known condition is manifested when the symptoms are known. Ultimately, the court determined that the insurance policies exclusion provision improperly denied coverage, but this was based on a congenital condition which exhibited no symptoms. Applying this reasoning to the instant case, plaintiff was made aware of his condition back in October 1994 when he noticed the symptoms of coronary artery disease.

■ Plaintiff also cites *Sheeler v. Ohio Bur. of Workers' Comp.* (1994), 99 Ohio App.3d 443, 651 N.E.2d 7, for the proposition that a preexisting condition is made known when it is diagnosed or identified. Plaintiff claims that this means more than unidentified nonspecific symptoms are required to establish a preexisting condition. Plaintiff is correct. In the instant case, there was more than unidentifiable nonspecific symptoms. There was specific identification of symptoms by the plaintiff, there was an examination by a doctor, and the doctor indicated to plaintiff that his symptoms were clearly indicative of coronary artery disease. Therefore, plaintiff's reasoning is correct but simply misplaced.

Plaintiff's also cites *Craver, supra*, and argues that the court's holding that the insurance policy language stating "where such sickness or disease is first manifested after the effective date of the policy" is ambiguous, is applicable to the exclusion provision in the instant case. He claims that the *Craver* language is similar to the wording of the exclusion provision in the instant case and thus the instant language is also ambiguous. This reasoning is not applicable to this case for two reasons. First, citations from Ohio Miscellaneous Reports are not binding on this court. See *N.R., Inc. v. Ohio Liquor Control Comm.* (1996), 113 Ohio App.3d 198, 680 N.E.2d 703. Second, we are more persuaded by *Craver*, 37 Ohio App.2d at 103, 66 O.O.2d at 171, 307 N.E.2d at 267, where the court considered the holding in the prior case and stated, "we have experienced difficulty in following the somewhat exiguous basis advanced for a finding of ambiguity in the above definition." Likewise, our review of the initial *Craver* case reveals no substantive basis for holding that the above-quoted language was ambiguous.

Based on the foregoing analysis, we find after viewing all the evidence in a light most favorable to the plaintiff that as a matter of law the insurance policy language is not ambiguous and that plaintiff had a preexisting condition to which the second policy did not apply. Accordingly, plaintiff's first assignment of error is overruled.

■ Plaintiff's second assignment of error states as follows:

"The trial court erred in granting summary judgment to ACMIC because the application of the pre-existing condition exclusion is unconscionable."

Plaintiff argues that the exclusion provision in the insurance policy is unconscionable because he was unaware of the existence of his preexisting condition and to deny him coverage based on this provision would produce an unjust result.

Plaintiff cites no cases that hold that exclusionary provisions are unconscionable. Instead, he claims that the denial of coverage based on the exclusion provision in addition to his lack of knowledge regarding his condition will produce an unjust result and therefore the provision is unconscionable.

Before the first short-term policy was activated plaintiff was informed by Cooper that preexisting conditions were not covered by the policy. Despite this information, plaintiff still signed the policy and activated it. Although the policy did not provide the coverage plaintiff expected, he cannot now complain about the result when he had full knowledge of the possibility of its occurring. Essentially, plaintiff received exactly what he bargained for.

We hold that there is nothing unconscionable about the exclusion provision in ACMIC's insurance policy and the trial court properly determined that no

genuine issue of fact exists. Accordingly, plaintiff's second assignment of error is overruled.

■ Plaintiff's third assignment of error states as follows:

"Where an insurer issues successive short-term policies, pre-existing condition exclusions within such policy in effect create only illusory coverage and are therefore unconscionable."

Plaintiff argues that the issuance of two successive short-term insurance policies is unconscionable. He claims that the polices are unconscionable because they purport to provide medical insurance, but, in reality, they provide coverage only for acute-type conditions of undiagnosed symptoms which occur within the time period of a single policy. In support of this proposition, plaintiff cites *Allen v. Golden Rule Ins. Co.* (Aug. 15, 1990), Montgomery App. No. 12109, unreported, 1990 WL 119288, where the court considered two successive insurance policies and found their application as a package to be illusory.

Essentially, the same reasoning in the prior assignment of error applies here. Plaintiff knew that he was receiving short-term health insurance and knew that preexisting conditions were excluded. The fact that a health problem arose before he signed a second policy, thereby creating a preexisting condition, does not show that the policy was illusory. The purpose of short-term policies is to provide health insurance for medical problems that arise during the pendency of the policies, and this is exactly what plaintiff received.

*Allen* is not applicable to the facts of the instant case because the issues are distinguishable. In *Allen,* the plaintiff wanted coverage for an injury that occurred after his short-term policy expired. The plaintiff argued that the policy's nonrenewability clause and exclusions, including one for preexisting conditions, rendered the policy unconscionable because "when these provisions are applied as a package, the coverage is illusory." The court did not agree with the plaintiff and found in favor of the defendant-insurance company, holding, "Considering both the purpose of issuing short-term policies and the options available to the purchaser of the policy to cover gaps we agree with the trial court that the policy is not unconscionable." *Id.,* unreported, at 2.

We agree with the holding in *Allen* and find that the insurance policy in the instant case was not illusory. Therefore, the trial court properly found no genuine issue of fact regarding whether ACMIC's insurance policy was illusory. Accordingly, plaintiff's third assignment of error is overruled.

Last, in regard to Cooper and Reed, plaintiff did not submit any assignments of error related to them. Therefore, we need not consider any arguments related to

**638**

them, and as a result we find that the trial court properly granted summary judgment in their favor. See App.R. 12(a)(2).

*Judgment affirmed.*

PATRICIA A. BLACKMON, A.J., and JAMES D. SWEENEY, J., concur.