RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0212P (6th Cir.)
File Name: 02a0212p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHRISTOPHER D. MILLER,
     _Plaintiff-Appellant,_

     _v._

FIDELITY SECURITY LIFE
INSURANCE COMPANY,
     _Defendant-Appellee._

No. 01-3157

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-02375—Jack B. Streepy, Magistrate Judge.

Argued: June 13, 2002

Decided and Filed: June 21, 2002

Before: MARTIN, Chief Circuit Judge; KEITH and
KENNEDY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Frederick J. Kreiner, FREDERICK J. KREINER
COMPANY, Cleveland, Ohio, for Appellant. Theodore M.
Dunn, Jr., BUCKLEY, KING & BLUSO, Cleveland, Ohio,
for Appellee. **ON BRIEF:** Frederick J. Kreiner,
FREDERICK J. KREINER COMPANY, Cleveland, Ohio,

1

for Appellant.  Theodore M. Dunn, Jr., Harold R. Rauzi, BUCKLEY, KING & BLUSO, Cleveland, Ohio, Rosemary G. Gold, Pepper Pike, Ohio, Susan A. Berson, SHOOK, HARDY & BACON, Kansas City, Missouri, for Appellee.

––––––––––––––––––

## OPINION

––––––––––––––––––

BOYCE F. MARTIN, JR., Chief Circuit Judge.  Plaintiff, Christopher Miller, appeals the grant of summary judgment to defendant, Fidelity Security Life Insurance Co., with respect to (1) his claims on two insurance policies issued to him by Fidelity (Counts I and II), (2) his claim that Fidelity was estopped from denying coverage (Count III), and (3) his claim that Fidelity acted in bad faith (Count IV).  We AFFIRM as to Count II and REVERSE as to Counts I, III and IV.[1]

I.

Shortly before graduating from Cleveland State University, Miller received a brochure offering him health insurance because of his affiliation with the Cleveland State University Alumni Association.  The advertisement identified American Insurance Administrators, Inc. as the insurance program's administrator and Fidelity Security Life Insurance Co. as the plan's underwriter.  Miller enrolled in the plan and was issued an insurance policy for the three month period beginning on June 20, 1998, and ending on September 17, 1998.

––––––––––––––––––––––––––––––

[1]In granting Fidelity's summary judgment motion, the magistrate judge – sitting by the parties' consent – also denied Miller's motion for partial summary judgment.  Because our treatment of the magistrate judge's grant of summary judgment to Fidelity covers Miller's motion, we do not separately address that motion's claims.

eligible for an extension of benefits.[5]   The magistrate judge found that Miller was not eligible for such an extension and therefore dismissed his estoppel claim.   Because the magistrate judge erred in concluding that Miller was not eligible, its dismissal of his estoppel claim was also erroneous.

Accordingly, we reverse the magistrate judge's determination with respect to Count III and remand for a determination of whether Fidelity should be estopped from denying coverage on the basis of Miller's failure to apply for an extension of benefits.

### D.

In Count IV of his complaint, Miller claimed that Fidelity handled his claim in bad faith.   The magistrate judge found that, because Miller's substantive coverage claims (Counts I and II) failed, his bad faith claim must also fail.   Because the magistrate judge erred in concluding that Miller was not eligible for benefits under the first policy's extension of benefits clause (Count I), its dismissal of Miller's bad faith claim was erroneous.

### III.

We REVERSE as to Counts I, III, and IV of Miller's complaint and REMAND for further proceedings consistent with this opinion.   We AFFIRM with respect to Count II.

---

[5]Miller couches his claim as one for promissory estoppel.   It is perhaps better examined under the doctrine of equitable estoppel: "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *Chavis v. Sycamore City School District*, 641 N.E.2d 188, 196 (1994).

The certificate of insurance for that policy indicated that its coverage was "not renewable" and did not cover pre-existing conditions.

The certificate also contained the following extension of benefits provision:

When coverage expires, benefits may be extended for a continuous injury or sickness which commenced while the coverage was in force and for which an Insured Person is then being treated.   Benefits will be extended for that Insured Person for Covered Charges related to such injury or sickness only while he remains totally disabled and under the care of a physician for the disability.[2]

The extension provision further indicated that benefits could be extended only to "the earliest of": "(a) the date on which treatment is no longer required; (b) the end of the total disability; (c) payment of maximum benefits; (d) 6 months from the expiration date; or (e) the end of any period of 90 consecutive days during which less than $100 of Covered Charges are incurred."

Shortly before the end of his insurance coverage period, Miller received a letter from American Insurance informing him that, if his "temporary need for health insurance still exists," he could apply for additional policies.   The letter indicated that a second policy would not be a continuation of his existing policy, but would be a "completely separate and new policy."   Moreover, it informed Miller, "[A]ny medical conditions for which you had symptoms or treatment before the second policy takes effect will be considered as pre-existing conditions, which are excluded from coverage under that second policy."

---

[2]The certificate defined the term "totally disabled" as follows: "total disability means that You are completely unable to perform the material and substantial duties of Your occupation because of Your injury or sickness."

Miller purchased a second policy. The second policy certificate was essentially identical to the first, with the exception of a longer – 180 day – coverage period, September 18, 1998, through March 16, 1998.

In July 1998, Miller manifested symptoms of what was eventually diagnosed as testicular cancer. On October 2, the cancer was removed and identified. Miller then received treatments, consisting of chemotherapy, testing, hospital visits, and office visits.

Miller's chemotherapy began in late October 1998 and was completed by January 1999. Miller's physician opined that Miller was disabled and unable to work during the duration of his chemotherapy and for a period of recovery thereafter.

Miller submitted claims to Fidelity related to his diagnosis and treatment. Fidelity paid all claims generated during the first policy period, but denied all claims generated thereafter.

Miller filed a lawsuit in Ohio state court, which Fidelity removed to the Northern District of Ohio on the basis of diversity jurisdiction. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure, the parties consented to the jurisdiction of a United States Magistrate. The magistrate judge granted summary judgment in favor of Fidelity and Miller appealed.

## II.

We review a grant of summary judgment *de novo*. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1176-77 (6th Cir. 1996). Summary judgment is appropriate where "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

*v. Am. Community Mut. Ins. Co.*, 616 N.E.2d 1208, 1209-10 (Ohio App. 1992) (quoting *Blohm v. Cincinnati Ins. Co.*, 529 N.E.2d 433, 436 (Ohio 1988)). "This is particularly true with exemptions and exclusions which are not expressed plainly and without ambiguity." *Id.*

Given our obligation to resolve any ambiguity in the extension provision in Miller's favor and given that a construction favorable to Miller best harmonizes the discrete sentences of that provision, we find that the extension of benefits provision *does not* require that Miller's cancer have resulted in a total disability during the original coverage period. It requires only that Miller's sickness have commenced.

Accordingly, we reverse the magistrate judge's determination as to Miller's breach of contract claim on the first policy (Count I) and remand for a determination of when Miller was totally disabled, and therefore eligible for coverage under the extension provision.[4]

## C.

In Count III of his complaint, Miller claimed that Fidelity was estopped from denying coverage on the basis of Miller's failure to apply for an extension of benefits because a Fidelity representative incorrectly informed him that he was not

---

[4]Of course, Miller's eligibility may still be limited to "the earliest of": "(a) the date on which treatment is no longer required; (b) the end of the total disability; (c) payment of maximum benefits; (d) 6 months from the expiration date; or (e) the end of any period of 90 consecutive days during which less than $100 of Covered Charges are incurred." These additional limitations do not change our contractual analysis because they do not affect whether a sickness is eligible for coverage, but instead affect the length of time that a covered sickness can justify benefits.

In his motion for partial summary judgment, Miller suggests that Fidelity is somehow estopped from applying the "earliest of" language because it was not included in a brochure explaining the policy's benefits. We do not address his suggestion here because there appears to be a factual question as to the extent to which Miller relied on the advertising brochure.

*disabled and under the care of a physician for the disability*.  (emphasis added)

The first sentence of the provision flatly contradicts the magistrate judge's interpretation.  It does not say: "benefits may be extended for a continuous injury or sickness which *resulted in a total disability* while the coverage was in force." Rather, it states: "benefits may be extended for a continuous injury or sickness which *commenced* while the coverage was in force."  Thus, the first sentence plainly permits extended benefits for a sickness that commenced during the initial coverage period.

The second sentence, however, limits the reach of the first: "Benefits will be extended for that Insured Person for Covered Charges related to such injury or sickness *only while he remains totally disabled and under the care of a physician for the disability*."  There are two possible readings of the second sentence: (1) benefits may only be extended to persons whose sickness commenced during the covered period, are only available while the insured is totally disabled, and are unavailable if the total disability did not manifest itself during the covered period; or (2) benefit may only be extended to persons whose sickness commenced during the covered period and are available while the insured is totally disabled, irrespective of when that disability began.

Because it suggests that a sickness must have caused total disability during the initial coverage period, the first interpretation is in considerable tension with the first sentence, which states that a sickness must only have "commenced."  Contrastingly, the second interpretation harmonizes the two operative sentences.  *See Ford Motor Co. v. John L. Frazier & Sons, Co.*, 196 N.E.2d 335, 337 (Ohio App. 1964) ("[A]n attempt must be made to harmonize, if possible, all the provisions of a contract.").

Moreover, "[i]t is well settled that, 'where the meaning of language used in a contract of insurance is doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured.'"  *DeMatteis*

### A.

In Count II of his complaint, Miller claims that the second policy should have covered his testicular cancer because (1) the second policy's pre-existing condition clause could not preclude coverage under Ohio Revised Code section 3923.57, and (2) section 3923.57 compels Fidelity to treat the second policy as a renewal of the first.  *See* Ohio Rev. Code § 3923.57 (West 2002).  Because we find section 3923.57 does not cover the policies at issue here, we reject Miller's claim.

### 1.

Section 3923.57 places certain limits on the reach of pre-existing condition clauses in individual policies and compels policy renewal at the insured's request under certain circumstances.  Ohio Rev. Code § 3923.57.

With respect to pre-existing conditions, section 3923.57(B) states:

In determining whether a pre-existing conditions provision applies to a policyholder or dependent, each policy shall credit the time the policyholder or dependent was covered under a previous policy, contract, or plan if the previous coverage was continuous to a date not more than thirty days prior to the effective date of the new coverage, exclusive of any applicable service waiting period under the policy.

Ohio Rev. Code § 3923.57(B).  If section 3923.57(B) applies, Fidelity would be statutorily barred from denying coverage for Miller's testicular cancer on the basis of the second policy's pre-existing condition clause.

Moreover, section 3923.57(C) states: "[A]n insurer that provides an individual sickness and accident insurance policy to an individual shall renew or continue in force such

coverage at the option of the individual."[3]  Ohio Rev. Code § 3923.57(C).  If section 3923.57(C) applies, Fidelity would be obliged to treat the second policy as a renewal of the first. So treated, the second policy would cover Miller's claim.

### 2.

The parties dispute whether the policies are "group" or "individual" policies under section 3923.57.  Fidelity argues that the policies are group policies because they were issued by a central entity (Fidelity) for the ultimate benefit of an identifiable group (the Cleveland State University Alumni Association).  Miller argues that because the required causal connection between the Alumni Association and the policy holder (the Alumni and Fraternal Benefits Trust) is non-existent, the policies could not have been issued as group policies and must as a matter of law be individual policies. The magistrate judge did not resolve the question of whether the policies were group or individual.  We need not address the issue here because section 3923.57 does not cover the policies, irrespective of their group or individual status.

### 3.

Section 3923.57, "does not apply to any. . . one-time limited-duration policy of no longer than six months."  Ohio Rev. Code § 3923.57(G).

The phrase "one-time limited-duration policy" is undefined. The Ohio appellate court decision in *Novak v. American Community Mutual Insurance Co.*, 718 N.E.2d 958 (Ohio App. 1998), however, does provide some guidance as to how similar short term policies are defined under Ohio law:

A policy which is called 'short term' is essentially a gap filler, or a policy which provides a person with health insurance for a short period until a primary policy begins.

---

[3]Section 3923.57(C) lists several exceptions to this rule, none of which apply here.

Here, plaintiff signed two short-term policies, which act as separate and distinct policies and are distinguishable from merely renewing an existing policy.

*Id.* at 959 n.1.

The policies at issue here were obtained by Miller as "gap fillers," presumably to serve until he could obtain insurance through an employer.  Moreover, the policies were separate and distinct.  Thus, they are analogous to those addressed in *Novak*.  We recognize that *Novak* involved a claim of unconscionability and did not directly address the definition of "one-time limited-duration policies" as used in section 3923.57.  We are reluctant, however, to ignore its guidance and extend the reach of section 3923.57, absent a more clear indication that the Ohio legislature intended section 3923.57 to cover policies such as those at issue here.

Accordingly, we find that section 3923.57 does not apply to Miller's policies.  *See* Ohio Rev. Code 3923.57(G).

### B.

The magistrate judge found that Miller's testicular cancer was not eligible for coverage under the first policy's extension of benefits provision because "he was not disabled during the period covered by the first policy."  That is, the magistrate judge concluded that Miller's condition must have resulted in a total disability during the first policy's coverage period to be eligible for coverage under the extension provision.

With respect to benefit eligibility, the extension of benefits provision reads as follows:

When coverage expires, benefits may be extended for a continuous injury or sickness *which commenced* while the coverage was in force and for which an Insured Person is then being treated.  Benefits will be extended for that Insured Person for Covered Charges related to such injury or sickness *only while he remains totally*