Richard E. LOCKE, Libelant,

v.

RIVER LINES, INC., Respondent.

No. 28349.

United States District Court
N. D. California, S. D.

Nov. 16, 1964.

Francis J. Solvin, San Francisco, Cal., for libelant.

Lillick, Geary, Wheat, Adams & Charles, by Graydon Staring, San Francisco, Cal., for respondent.

SWEIGERT, District Judge.

Libelant brings this suit to recover damages from respondent for claimed personal injury sustained while libelant was a crew member of a three man crew river tug which, at the time of the accident, was engaged in mooring a barge, which it had in tow, to a tree on the river bank.

Before the happening of the accident here involved the tug had completed a so-called "jackknife" operation to position the barge for mooring. Upon virtual completion of this positioning operation, libelant, Locke, stepped from the tug to the barge, proceeded to the stern of the barge to ready the barge mooring line, freed the line from the bit, untangled it while facing the river bank and had just about readied the line when, while partly stooped over, but before starting any actual mooring operation, he heard the barge contact the river bank and also heard a sound of something falling, tried to duck, but was struck and injured by a falling branch which had broken from a river bank tree near the intended mooring tree.

It appears inferentially that the branch fell as the result of the movement of the barge against the bank—although there is no substantial evidence that the contact was unusual.

We may assume that the river bank, and a tree upon it, were being used in this operation for the same purpose as a wharf or pier would ordinarily be used. It appears from the evidence that mooring to a tree is usual, common practice in river operations of this kind and that trees are often disturbed and caused to fall or branches caused to break from them.

The first question is whether on this evidence it can be found that Locke's injury was caused, as alleged, by an unseaworthiness of the tug—considered as including the barge then in tow.

In support of his contention that this case gives rise to absolute liability under the doctrine of seaworthiness, libelant cites such cases as Huff v. Matson Navigation Company, 338 F.2d 205 (9th Cir. 10/22/64); Olson Towboat Company v. Dutra, 300 F.2d 883 (9th Cir. 1962); Thompson v. Calmar Steamship Corporation, 331 F.2d 657 (3rd Cir. 1964); Bryant v. Partenreederei-Ernest Russ, 330 F.2d 185 (4th Cir. 1964).

Huff, supra, is certainly authority for the proposition that the doctrine of unseaworthiness is broad enough to embrace equipment used for loading or unloading operations even though the equipment is brought to or into the ship by others.

Olson, supra, affirmed a finding of unseaworthiness (and also of negligence) upon evidence that a tug crewman, casting a line to a dock from a tug-barge operation, sustained a hand cut from a metal loop in the line.

In Thompson, supra, the Court followed the rule of Gutierrez v. Waterman Steamship Corporation, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297, to the effect that, if a crewman or longshoreman is actually engaged in the service of the ship, it is immaterial whether an accident *caused by the ship's unseaworthiness* occurs away from the ship or on the pier, and affirmed a finding of unseaworthiness upon evidence that the ship's engines, winches and lines, then being used to shove gondola cars on a pier in a manner that was not reasonably safe loading procedure, caused one of the cars to run over a longshoreman on the pier.

In Bryant, supra, the Court merely held that a ship was unseaworthy when warped boards were furnished to the crew for forming a shipboard grain box.

In the pending case the question is whether a ship, or a tug-barge unit, mooring to a wharf or pier, or the equivalent in the form of a river bank tree, can be held unseaworthy merely because, as a result of necessary contact with the mooring place (which contact we will assume for the present, was non-negligent) an object, with which the ship has no other operating connection, falls from the dock or bank onto the ship.

Applying the most liberal version of unseaworthiness, the Court cannot find unseaworthiness in the pending case. Assuming that the tree branch broke as a result of the contact with the river bank, the branch was not part of any gear or device being used by the tug-barge unit in its operations—unlike Thompson, supra, where the ship's devices were being used to operate cars on the pier.

It should be further noted that, although Thompson, supra, seems to hold that unseaworthiness may exist when otherwise perfectly safe devices are used in a negligent manner, two judges of the court, on re hearing in banc, dissented upon the ground that the absolute liability of unseaworthiness was being confused with negligence, pointing out that "The Supreme Court has never supported a finding of unseaworthiness which could not be rationalized as involving some structural or functional unfitness of vessel or gear for its intended use."

Whatever may be the proper rule on this point, we do not find in the present case that either the tug-barge unit, itself, or any of its devices were being used in an improper, negligent manner.

To find otherwise would be to stretch the rule of absolute liability for *unseaworthiness* into a rule of absolute liability for industrial *accident*.

It remains to determine whether any negligence on the part of the shipowner, or its employees, contributed in any way to the plaintiff's claimed injury.

Libelant contends that there was such negligence in several respects—negligent choice by the captain of the so-called "jackknife" method of positioning the tug-barge unit for mooring rather than the so-called "rounding-to" method; failure to provide a second member of the crew at the stern of the barge to signal to the captain and to assist libelant in the mooring; the "slamming" of the barge against the river bank.

■■ Bearing in mind that libelant has the burden of proof on the issue of negligence we do not find that he has sustained that burden of proof upon the issue that choice of the jackknife method was negligent or that such was a contributing cause of this accident.

Although the witness, Boling, called as an expert by libelant, testified that in his opinion the "rounding-to" method would have been "safer", he did not establish that there was anything "unsafe" about the "jackknife" method and he conceded that it was often used in practice.

On the contrary, the witness, Enright, a 31 year veteran crewman, who was a member of the crew during the operation in question, testified that the jackknife method was actually safer in that it gave better control and maneuverability—especially in narrow places.

We reach the same conclusion upon the issue of failure to provide a second member of the crew to signal or to assist libelant.

Although libelant's witness, Boling, testified that in his opinion there should have been an additional man at the stern to signal and assist libelant, the witnesses, Enright and Mackell, both testified that it was nothing more than a customary, one man chore and, further, libelant himself, who admittedly had performed the operation many times and knew what to do without directions, made no request for either directions or assistance.

■ Further, the Court finds, that claimed absence of an assistant was not, under the circumstances of this case, a contributory cause of the accident here involved.

■ Concerning the alleged "slamming" of the barge into the river bank, we do not find in the record any substantial evidence (apart from the description given by libelant's counsel) that the contact with the bank was in any way unusual or negligent. According to the evidence, a tug operator could perform this maneuver by either the "jackknife" or "round-to" method without any great slamming or bumping, and as far as the evidence shows, such was the case here.

■ Although the issue of contributory negligence becomes immaterial in the light of these findings, we, nevertheless, find for the record that libelant was not guilty of contributory negligence in the situation. We place our decision upon the ground that his claimed injury was solely, although unfortunately, caused by an accident to which no negligence of the shipowner nor any unseaworthiness of the ship contributed.

We recognize the oft stated purpose of the law, as restated by Judge Pope in Huff, supra, "to assess the cost of hazards of marine service, 'insofar as it is measurable in money,' upon the shipowner and not the worker, since he ' * * is in position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its costs.' "

This statement of policy, however, has never been intended to transform the liability of a shipowner into liability without fault on the pattern of Workmen's Industrial Accident statutes.

In the opinion of this Court such a change of the law would be a preferable and appropriate way to achieve the stated socio-economic, humanitarian objective. Unfortunately, however, no such change of the law has been made although courts sometimes accomplish the result by liberal interpretation of the requirement for unseaworthiness or negligence.

As recognized by the Court in Huff, supra, some fault of the shipowner must appear—either negligence or unseaworthiness. It was for the purpose of determining whether such unseaworthiness existed in fact that the Court in Huff, supra, remanded the case to the District Court.

In the pending case the Court, being unable to find either unseaworthiness of the ship or negligence of the respondent, concludes that judgment should be for the respondent.

Respondent will prepare, serve for approval as to form and file proposed findings of fact, conclusions of law and a proposed judgment accordingly.