*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GLENDA CHURCHWELL,

    *Plaintiff-Appellant,*

  *v.*

BLUEGRASS MARINE, INC., MARQUETTE
TRANSPORTATION CO., INC., and MOTOR VESSEL
MARIE HENDRICK,

    *Defendants-Appellees.*

No. 05-5185

---

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 03-00193—W. David King, Magistrate Judge.

Argued and Submitted: March 15, 2006

Decided and Filed: April 21, 2006

Before: MARTIN and CLAY, Circuit Judges; SARGUS, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Bobby R. Miller, Jr., GAULT, MARSHALL & MILLER, Paducah, Kentucky, for Appellees. **ON BRIEF:** John J. Osterhage, LAWRENCE & SCHLETKER, Warsaw, Kentucky, for Appellant. Bobby R. Miller, Jr., E. Spivey Gault, GAULT, MARSHALL & MILLER, Paducah, Kentucky, for Appellees.

---

**OPINION**

---

  CLAY, Circuit Judge. Plaintiff, Glenda Churchwell, appeals an order of the United States District Court for the Western District of Kentucky, granting summary judgment in favor of Defendants, Bluegrass Marine, Inc., Marquette Transportation Company Inc., and Motor Vessel *Marie Hendrick*, and dismissing Plaintiff's claims of 1) unseaworthiness in violation of general maritime law, and 2) negligence in violation of the Jones Act. For the reasons set forth below, we **REVERSE** the district court's dismissal of Plaintiff's claims.

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

## I.
## BACKGROUND

Plaintiff's personal injury claims arise out of an accident that occurred aboard Defendants' ship, the *Marie Hendrick*, on May 9, 2002, where Plaintiff was employed as a cook. Plaintiff was cleaning the kitchen after having served the crew breakfast. She poured grease from a skillet into a coffee can. According to Plaintiff, a crewman named Larry had instructed her that the grease must be kept in the coffee can. Plaintiff then picked up the coffee can to place it back in its corner. She picked up the can by its rim using her right hand and placing her thumb in the interior of the can while placing remainder of her hand on the outside of the can. Apparently, the inside of the can was greasy, and the can slipped from Plaintiff's fingers. The can hit the counter and fell onto the floor. The grease, which was not hot, landed on the counter, Plaintiff, and the smooth, solid floor mat on which Plaintiff was standing. Plaintiff took one step backwards and slipped in the grease on the floor. Plaintiff sustained back injuries from her fall.

According to Plaintiff, she would not have dropped the grease can if she had been allowed to place it in a container with handles, and she would not have slipped if the mat had contained holes to re-direct the grease. Plaintiff obtained the services of Dr. Huston,[1] an engineer, to support her argument that Defendants' failure to provide mats with holes ("grease mats") and a container with a handle created a dangerous work environment. Dr. Huston testified at his deposition that Defendants should have placed a grease mat in the kitchen because spills in a kitchen are foreseeable and unavoidable. Additionally, Dr. Huston testified that Defendants should have provided Plaintiff with a grease container that had a handle. According to Dr. Huston, grease containers with handles are commercially available. Finally, Dr. Huston testified that it was his opinion that Defendants' failure to provide grease mats and a container with a handle made Plaintiff's accident more likely. Specifically, a container with a handle would have decreased the likelihood of spills and a grease mat would have substantially decreased the likelihood of accidents from spilled liquid by containing and diverting the liquid.

Defendants moved *in limine* to exclude Dr. Huston's testimony. They argued that Dr. Huston's testimony improperly characterized their duties under the relevant law by implying that Defendants had a duty to provide an accident-free work place. Additionally, Defendants argued that Dr. Huston's testimony that safer alternatives existed, *i.e.,* the grease mat and container with handle, was irrelevant to the issues in this case. According to Defendants, the existence of safer alternatives does not render the existing conditions unsafe.

That same day, Defendants moved for summary judgment. Defendants argued that the negligent manner in which Plaintiff picked up the grease container was the sole cause of Plaintiff's injuries. Defendants pointed to Dr. Huston's admission that if Plaintiff had picked up the container with two hands or if she had placed the container on a tray to move it that she would have been less likely to drop it. Thus, according to Defendants, summary judgment was proper because: (1) Defendants had not breached any duty by providing an unreasonably dangerous work environment; and (2) Plaintiff's own negligence was the proximate cause of her injuries rendering the primary duty rule a bar to Plaintiff's suit.

Plaintiff eventually responded to Defendants' motion for summary judgment but failed to respond to their motion *in limine*. Thus, the district court granted Defendants' motion *in limine,* holding that: (1) Dr. Huston's testimony that the *Marie Hendrick*'s kitchen was unreasonably

---

[1]Dr. Thomas R. Huston received a bachelor's degree in engineering science, a master's degree in mechanical engineering, and a Ph.D. in industrial engineering from the University of Cincinnati. He works for the consulting firm R.L. Huston & Associates and is an adjunct associate professor at the University of Cincinnati. He teaches classes on safety and human factors in engineering.

dangerous was an inadmissible legal conclusion; and (2) Dr. Huston's testimony regarding safer alternatives to the grease can and slippery mats was irrelevant. The district court also granted Defendants' motion for summary judgment, holding that there was no evidence that Defendants had breached their duty of "ordinary prudence" under the Jones Act or that the *Marie Hendrick* was unseaworthy. The court reasoned that no similar mishaps had occurred in the past, Plaintiff failed to present evidence that the mats and grease container violated custom, and the danger from the grease was open and apparent. It further reasoned that Plaintiff's own negligence caused the accident. Finally, the district court rejected Plaintiff's maintenance and cure claim on the ground that Plaintiff was no longer capable of further recovery and any treatment would only serve to alleviate pain and suffering. Plaintiff now appeals the district court's grant of summary judgment in favor of Defendants on her unseaworthiness and Jones Act claims but not on her maintenance and cure claim.

## II.
## DISCUSSION

The district court erred in granting Defendants' motion for summary judgment on Plaintiff's unseaworthiness and Jones Act claims. Plaintiff presents sufficient evidence such that she could prevail on both claims at trial. Moreover, contrary to Defendants assertions, Plaintiff's own negligence does not provide an adequate basis on which to grant summary judgment. Maritime law espouses a system of comparative negligence, in which a plaintiff's own negligence does not bar recovery. The only exception to this rule is the primary duty doctrine, under which the employee responsible for maintaining safe conditions may not sue his employer for his own failure to maintain safe conditions. As the primary duty doctrine has no application in this case, Plaintiff's alleged negligence is not grounds for summary judgment. Therefore, we reverse the order of the district court, granting summary judgment in favor of Defendants.

### A.        Standard of Review

This Court reviews a district court order granting summary judgment *de novo*. *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001). Summary judgment is only proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a grant of summary judgement, we draw all reasonable inferences in favor of the nonmoving party. *Rannals*, 265 F.3d at 447. "In particular, when we review a grant of summary judgment involving claims under the Jones Act, we are mindful of the policy of providing expansive remedies for seamen who are injured while acting in the course of their employment and recognize that the submission of Jones Act claims to a jury requires a very low evidentiary threshold." *Id.* (internal quotations omitted). Plaintiff must offer "more than a scintilla of evidence in order to create a jury question on the issue . . . but not much more." *See Aparicio v. Norfolk & W. Ry. Co.* 84 F.3d 803, 810 (6th Cir. 1996) (addressing a FELA negligence claim).

### B.        Analysis

#### 1.        Dr. Huston's Testimony

As a threshold matter, we note that we may not consider Dr. Huston's testimony in determining whether Plaintiff demonstrates the existence of genuine issues of material fact. We conclude that we may not consider Dr. Huston's testimony because Plaintiff failed to preserve its admissibility for this Court's review. The district court excluded Dr. Huston's testimony in response to Defendants' motion *in limine*. Despite being given multiple opportunities in the district court to respond to Defendants' motion, Plaintiff failed to oppose the motion. Therefore, Plaintiff failed to

preserve this issue for our review, and we cannot now disregard the district court order excluding Dr. Huston's testimony. *Barner v. Pilkington N. Am.*, 399 F.3d 745, 749 (6th Cir. 2005) (holding that a party must alert the trial court to the legal basis for the admission of evidence in order preserve the right to appeal the trial court's exclusion of evidence).

### 2.        Plaintiff's Unseaworthiness Claim

The district court erred in granting Defendants' motion for summary judgment on Plaintiff's unseaworthiness claim because Plaintiff offered sufficient evidence to create a genuine issue of material fact as to each element of her unseaworthiness claim.

### a.        The Doctrine of Seaworthiness

A ship owner is strictly liable for personal injuries caused by his or her vessel's "unseaworthiness." *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 549 (1960). A vessel is unseaworthy if the vessel and its appurtenances are not "reasonably fit for their intended use." *Mitchell*, 362 U.S. at 550. Defective gear, an unfit or understaffed crew, or the use of an improper method of storage or unloading cargo all render a vessel unseaworthy. *Morales v. City of Galveston*, 370 U.S. 165, 170 (1962). Even the misuse of properly functioning equipment may render a vessel unseaworthy if the misuse occurs at the direction of a superior. *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 726-28 (1967) (citing *Crumady v. The Joachim Hendrik Fisser*, 358 U.S. 423, 427 (1959)). Generally, unseaworthiness is a question of fact for the jury and should not be resolved by the district court as a matter of law. *See Cook v. American S.S. Co.*, 53 F.3d 733, 742 (6th Cir. 1995) (citing *Roper v. United States*, 368 U.S. 20 (1961)), *overruled on other grounds by Gen. Elec. v. Joiner*, 522 U.S. 136, 143 (1997).

To prevail on an unseaworthiness claim, a plaintiff must establish that a vessel's unseaworthy condition was the proximate cause of his or her injuries. *Miller v. Am. President Lines, LTD*, 989 F.2d 1450, 1463-64 (6th Cir. 1993). A vessel's unseaworthiness is the proximate cause of a plaintiff's injuries if it was a substantial factor in causing such injuries. *Id.* at 1464. In other words, unseaworthiness proximately causes an injury if it "' played a substantial part in bringing about or actually causing the injury and the injury was either a direct result or a reasonably probable consequence of unseaworthiness.'" *Id.* (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988)).

### b.        Summary Judgment was Improper

Plaintiff's testimony creates sufficient evidence to create a genuine issue of material facts as to both elements of an unseaworthiness claim: (1) the unseaworthy condition of the ship; and (2) proximate causation.

### i.        Unseaworthy Condition

Plaintiff's testimony creates a genuine issue of material fact as to whether the absence of grease mats and a container with a handle rendered the *Marie Hendrick* unseaworthy. A vessel may be unseaworthy because it contains defective gear, is missing necessary gear, or because its crew is instructed to use unsafe work methods. *Morales*, 370 U.S. at 170; *see Walderon*, 386 U.S. at 727 (holding that crew's misuse of equipment pursuant to order rendered vessel unseaworthy). According to Plaintiff's deposition testimony, the kitchen did not contain grease mats or containers with handles, which are arguably necessary gear. Additionally, Plaintiff testified that she was instructed to pour grease into a coffee can, an arguably unsafe work method. Although the admission of Dr. Huston's testimony undoubtedly would have strengthened Plaintiff's contention that these conditions rendered the *Marie Hendrick* unseaworthy, a jury does not need expert testimony to conclude that Defendants' failure to provide grease mats and a container with a handle

rendered Plaintiff's work environment unsafe. These issues fall squarely within the type of knowledge that most persons obtain through everyday life experiences. *Cf. Butera v. District of Columbia*, 235 F.3d 637, 659 (D.C. Cir. 2001) (applying District of Columbia law); *Dilligham v. IBP, Inc.*, 219 F.3d 797, 799 (8th Cir. 2000 ) (applying Kansas law); *U.S. v. Corey*, 207 F.3d 84, 97 n.11 (1st Cir. 2000) (quoting 29 Charles Allan Wright & Victor James Gold, Federal Practice and Procedure § 6274 (1997) ("On the other hand, expert testimony does not assist where the jury has no need [] for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic."). Because reasonable people could disagree about whether the absence of grease mats and containers with handles rendered Plaintiff's work space unsafe, this issue should be submitted to the jury. *See Hutch v. Durocher Dock & Dredge Co.*, 33 F.3d 545, 547 (6th Cir. 1994) (holding that where reasonable people applying the proper legal standard could disagree the claim should be submitted to the jury).

Accordingly, we reject Defendants argument that proof of a safer work environment or methods is inadmissible.[2] The Federal Rules of Evidence require district courts to admit all relevant evidence unless such evidence is otherwise inadmissible. *See* Fed. R. Evid. 402. The rules define relevant evidence as "evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). As the Supreme Court and this Court have noted on numerous occasions, this standard of relevancy is liberal. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993); *Hildebrand v. Bd. of Trustees of Mich. State Univ.*, 607 F.2d 705, 713 n.15 (6th Cir. 1979).

We believe that evidence of a safer environment or method is relevant within the meaning of Rule 401. Plaintiff is suing Defendants for failure to maintain safe working conditions and negligence and thus must demonstrate that Defendants failed to exercise reasonable or ordinary care in outfitting the kitchen. "Typically, this involves a person's giving attention both to possible dangers, mistakes and pitfalls and to ways of ensuring that these pitfalls do not materialize." Black's Law Dictionary 204 (7th ed. 1999) (defining care in the context of negligence). Proof that a safer alternative existed makes it "more probable" that Defendants failed to exercise reasonable care in outfitting the kitchen.

The advisory committee notes to Rule 407, which precludes the introduction of subsequent remedial measures to prove negligence, provide an illustrative analogy. Fed. R. Evid. 407 advisory committee's notes. According to the advisory committee notes, evidence of subsequent remedial measures are excludable for policy reasons and not because such measures are irrelevant. *Id.* The notes indicate that one could logically infer from a defendant's decision to take subsequent remedial measures that defendant's prior conduct or failure to take such measures was negligent. *Id.* Although Plaintiff's testimony in this case does not cover subsequent remedial measures, the implication from the advisory committee notes is nonetheless clear. Evidence of an alternative to allegedly negligent conduct is relevant, and thus admissible, unless excluded by another rule of evidence for policy reasons. In this case, no such exclusionary rule exists. *See generally* Fed. R. Evid. Art. IV, Relevancy And Its Limits (containing no applicable exclusionary rule).

*Locke v. River Lines, Inc.,* 248 F. Supp. 92 (N.D. Cal. 1964), does contradict this holding. In *Locke*, the district court determined that the existence of a safer docking procedure did not render the procedures used by the defendant negligent or unsafe. *Id.* at 94. *Locke*, however, addressed the sufficiency of evidence and not the admissibility of evidence. *Id.* In *Locke* the court admitted expert testimony regarding safer docking procedures but found that such testimony, alone, did not

---

[2] Although Defendants make this argument in regard to the exclusion of Dr. Huston's testimony, it applies with equal force to Plaintiff's own testimony.

prove that the defendant's method was unsafe. *Id.* Unlike in *Locke*, the issue in this case is not whether evidence of a safer environment or measures alone proves that Defendants were negligent, but rather whether such evidence makes it more probable that Defendants were negligent. As discussed above, we believe that it does make it more probable that Defendants were negligent.

Finally, we also reject Defendants' argument that the *Marie Hendrick* was not unseaworthy because Plaintiff had a safe alternative to grasping the coffee can with one hand: she could have used two hands. Defendants cite several cases from outside this Circuit to support this argument. These cases are not on point, however, because the defendants in the cited cases all clearly met their duty of care. That is, in the cited cases there was nothing more that the defendants could have done to prevent the accidents and make the ship safer. *See Lyons v. Ohio River Sand and Gravel Co.*, 683 F.2d 99 (4th Cir. 1982) (holding that the defendant was not negligent for sending one man to obtain a screen because it was unforeseeable that the screen would be buried under heavy objects that the plaintiff would choose to lift without asking for help when the general practice on the ship was to give assistance to others in such situations); *Robinson v. Zapata Corp.*, 664 F.2d 45 (5th Cir. 1981) (holding that the ship was not unseaworthy for failing to provide the plaintiff welder with a clamp to secure a piece of metal where other equipment/methods existed to insure the metal held in place and the plaintiff, with knowledge of these methods, chose not to secure the metal); *Fueston v. Lykes Bros. Steamship Co.*, 550 F.Supp. 139 (N.D. Cal. 1982) (holding that a ship was not unseaworthy where the plaintiff slipped after choosing not to climb the ladder leading to top platform but and instead climbed a ladder and leaped to the top platform).[3] The accidents in these cases were caused by the plaintiffs' *unforeseeable* decisions not to use the safe alternatives provided by the defendants. In this case, it is debatable whether the "alternative" provided by Defendants – a two hand method of gripping the coffee can – was adequate to meet its duty to provide a safe environment. *See Ribitzki v. Canmar Reading & Bates Ltd.*, 111 F.3d 658 (9th Cir. 1997) (holding that whether the defendant met its duty of care was an issue for the jury where the plaintiff could have avoided the accident by using a safer method but where defendant could have prevented the accident by providing a larger space for the plaintiff's work). Spills are still likely to occur if Defendants' employees adopt the two hand method. In light of the foreseeable nature of spills even accepting Defendants' two hand method, it seems reasonable for Plaintiff to argue that Defendants nonetheless had a duty to provide grease mats. Ultimately, it is the job of the jury to determine whether Defendants met their duty or whether Defendants should have provided a container with handles and/or grease mats. *Id.* (holding that whether a defendant meets its duty is generally a jury issue).

### ii.        Causation

Plaintiff has also offered sufficient evidence of proximate causation to create a genuine issue of material fact. Again, Plaintiff is free to testify that the lack of adequate flooring was a substantial factor causing her to slip and that the lack of a container with a handle was a substantial factor contributing to the container slipping from her grip. Plaintiff does not need an expert to testify about such causation in order to submit this issue to the jury. These issues fall squarely within the type of knowledge that most persons obtain through everyday life experiences. Because reasonable people could disagree about whether these conditions were substantial factors causing Plaintiff's accident, causation is properly an issue for the jury. *See id.*

---

[3]Additionally, Defendants rely heavily on *Fasold v. Del. River & Bay Auth.*, No. 01-CV-4541, 2003 WL 22723019 (D.N.J. Aug. 6, 2003), which the Third Circuit overruled on direct review, holding that Fasold's Jones Act and unseaworthiness claims based on an injury she sustained while moving a beer keg on a ship should go to the jury. 117 Fed. App'x 836 (3d Cir. 2004). The Third Circuit reasoned that reasonable persons could disagree as to whether the defendants met their duty to provide a safe work environment, where Fasold needed to move the keg in order to clean and was unable to find a male crew member to help her move the keg. *Id.* at 839.

### 3.    Plaintiff's Jones Act Claim

The district court erred in granting summary judgment on Plaintiff's Jones Act claim because Plaintiff offered sufficient evidence to create genuine issues of material fact as to each element of her Jones Act claim.

#### a.    The Jones Act

The Jones Act, 46 U.S.C. § 688,[4] authorizes seamen to maintain negligence actions for personal injury suffered in the course of employment. The Act expressly incorporates all portions of FELA that modify and extend the common law as applied to actions by railroad employees. *Id.* Thus, under the Jones Act, an employer has a duty to provide a safe workplace for its employees, and to prevail under the Jones Act a "plaintiff must show that her employer [breached this duty by] failing to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known." *Rannals*, 265 F.3d at 449-50 (citations omitted). Once a plaintiff establishes that the employer breached his or her duty of care, however, the plaintiff need not establish proximate causation but "only show that the defendant's actions, however slight, contributed in some way toward causing the plaintiff's injuries." *Miller*, 989 F.2d at 1463 (citation omitted); *see also* 45 U.S.C. § 52 (authorizing damages where an "injury . . . result[s] in whole or in part from . . . negligence").

#### b.    Summary Judgment Was Improper

Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to each element of her Jones Act claim: (1) the kitchen was unreasonably dangerous; (2) the dangerous condition caused Plaintiff to fall; and (3) Defendants should have known about the dangerous condition. As discussed above in relation to the unseaworthiness claim, Plaintiff has offered sufficient evidence that her work area was unreasonably dangerous and that the dangerous conditions caused her to fall. This analysis applies equally to her Jones Act claim. In fact, the requisite level of causation is lower under the Jones Act. Additionally, there is sufficient evidence that Defendants should have been aware of the dangerous condition of their kitchen. Spills in a kitchen are reasonably foreseeable, and Defendants should know what type of equipment their kitchen contains, *i.e.,* the absence of grease mats and containers with handles. *See Ribitzki*, 111 F.3d at 663-64 (holding that a ship owner was on constructive notice of permanent conditions on ship). Therefore, Plaintiff's Jones Act claim should have been submitted to the jury. *See id.*

### 4.    Plaintiff's Alleged Negligence

Plaintiff's alleged negligence does not provide a proper basis for summary judgment. Maritime law espouses a system of comparative negligence, in which a plaintiff's negligence does not preclude recovery. The only exception to this rule is the primary duty doctrine, which has no application in this case.

#### a.    System of Comparative Negligence

Maritime law espouses a system of comparative negligence. *Miller*, 989 F.2d at 1459-63. "This defense requires . . . evidence that the seaman chose to perform a task in a manner that placed him in danger despite the fact that there were alternative means available to him" *Wilson v. Maritime Overseas Corp.*, 150 F.3d 1, 11 (1st Cir. 1998) (citing *Burden v. Evansville Materials,*

---

[4]"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply . . . ."

*Inc.*, 840 F.2d 343, 346 (6th Cir. 1998)).  If such evidence exists, the issue of the plaintiff's comparative negligence is submitted to the jury and the plaintiff's damages are reduced by the degree of fault that the jury assigns to plaintiff's behavior.  *Miller*, 989 F.2d at 1461-62.  It is well-established that comparative negligence applies to unseaworthiness claims as well as Jones Act claims.  *Id.*  at 1461-6 (citing *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 408-09 (1953)); *see also Cook*, 53 F.3d at 741.

The doctrine of contributory negligence, however, does not preclude a plaintiff from complete recovery on unseaworthiness or Jones Act claims.  *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 408-09 (1953).  "The harsh rule of the common law under which contributory negligence wholly barred an injured person from recovery is completely incompatible with modern admiralty policy and practice. Exercising its traditional discretion, admiralty has developed and now follows its own fairer and more flexible rule which allows such consideration of contributory negligence in mitigation of damages as justice requires."  *Id.*; *see also* 45 U.S.C. §53 (abolishing contributory negligence as a bar to recovery in FELA and Jones Act claims).  Similarly, assumption of risk may not be raised as a defense in either type of action, even to prevent partial recovery.  *See Burden*, 840 F.2d at 346; 45 U.S.C. § 54 (abolishing assumption of risk as a defense to negligence in FELA and Jones Act suits).

In this case, Defendants offer evidence that Plaintiff's own negligence caused her injury. As discussed above, contributory negligence does not bar recovery on Jones Act and unseaworthiness claims.  Maritime law espouses a system of comparative negligence in which the plaintiff's damages are reduced by the plaintiff's degree of fault.  Thus, the jury should be instructed on comparative negligence and allowed to determine whether Plaintiff was negligent and, if so, the degree of Plaintiff's fault for her injuries.  Plaintiff's alleged negligence, however, does not bar recovery.  *See Ribitzki*, 111 F.3d at 662 (holding that the plaintiff's negligence does not "cancel out" the defendant's negligence).

Defendants cite the First Circuit's decision in *Wilson* to support their argument that Plaintiff's alleged negligence is a complete bar to recovery.  In *Wilson* the First Circuit stated, "contributory negligence can be a complete defense when a jury finds that the plaintiff's own negligence was the sole proximate cause of the injuries."  150 F.3d at 11.  Defendants' argument fails for two reasons.  First, it is far from clear that Plaintiff was negligent and that her negligence was the sole cause of her injuries.  Second, we find the First Circuit's argument unpersuasive.  The First Circuit's analysis confuses the concepts of contributory negligence and proximate causation. In order to reach the issue of contributory negligence, a plaintiff must first establish a *prima facie* case of the defendant's negligence.  Restatement (Second) of Torts § 463 (1965) (defining contributory negligence as negligence that *combined* with the defendant's negligence causes the plaintiff's harm).  The *prima facie* case must include evidence that the defendant's breach proximately caused the plaintiff's injuries. Restatement (Third) of Torts § 6 cmt. b (2005). Where the evidence indicates that the plaintiff's own negligence was sole proximate cause of the plaintiff's injuries, then the plaintiff cannot establish a *prima facie* case.  *See id.*  In such cases, the plaintiff does not lose because of his or her contributory negligence but rather because the defendant was not negligent.

### b.        The Primary Duty Rule

In contrast to comparative negligence, the primary duty rule provides ship owners with a complete defense against Jones Act and unseaworthiness claims.  "The primary duty rule provides that a ship's officer may not recover against his employer for negligence or unseaworthiness when there is no other cause of the officer's injuries other than the officer's breach of his consciously assumed duty to maintain safe conditions aboard the vessel."  *Wilson*, 150 F.3d at 11 (citing *Walker v. Lykes Brost. S.S. Co.*, 193 F.2d 772, 773 (2d Cir. 1952).  "[A]n instruction on the primary duty

rule must be given if the evidence establishes a genuine issue of controversy as to whether [the plaintiff] owed a duty to the defendants, whether he breached the duty, and whether the breach was the *sole* proximate cause of his injury." *Id.* (emphasis in original). "[T]he primary duty rule does not bar recovery where the plaintiff breached his duty but the ship's owner was also independently at fault." *Id.* In such cases, the jury must apply the doctrine of comparative negligence. *See id.*

The primary duty rule has no place in this case. In order for the primary duty doctrine to apply, the defendant must offer evidence that the Plaintiff "consciously assumed [the] duty to maintain safe conditions aboard the vessel." *Wilson*, 150 F.3d at 11. There is absolutely no evidence that Plaintiff consciously assumed any such duty. *See Ribitzki*, 111 F.3d at 665-666 ("[T]he rule only applies to a knowing violation of a duty consciously assumed as a term of employment."); *cf. Malefant v. Beatty St. Props., Inc.*, 328 F. Supp. 668 (S.D. Tex. 2004) (holding that the primary duty rule precluded recovery where the plaintiff slipped because of missing non-skid tape, which it was the plaintiff's duty to insure was in place). Therefore, the primary duty rule does not make summary judgment proper in this case.

In summary, the district court erred in granting summary judgment because Plaintiff has offered sufficient evidence to create a genuine issues as to all elements of Plaintiff's unseaworthiness and Jones Act claims. Additionally, neither contributory negligence nor the primary duty rule render summary judgment proper in this case because the doctrine of contributory negligence does not apply under maritime law and because the primary duty doctrine does not apply on the facts of this case.

### III.
### CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment in favor of Defendants on Plaintiff's unseaworthiness and Jones Act claims and **REMAND** for trial.