NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0113n.06

No. 18-1783

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MUSID MUSLEH,                                  )
                                               )
    Plaintiff-Appellant,                        )
                                               )
v.                                             )
                                               )
AMERICAN STEAMSHIP COMPANY,                    )
                                               )
    Defendant-Appellee.                         )

**FILED**
Mar 12, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before: NORRIS, DAUGHTREY, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. After being injured while working as a seaman aboard a ship, Musid Musleh filed suit against the shipowner, American Steamship Company. The district court granted summary judgment in favor of American Steamship. A few months later, Musleh again filed suit against American Steamship. Because Musleh's claims in this lawsuit arose out of the same injury as the claims in the first lawsuit, the district court determined that res judicata barred Musleh's claims. For the reasons stated, we AFFIRM.

I.

On December 26, 2014, Musleh injured his shoulder and thumb while working as a seaman aboard a ship owned by American Steamship. A doctor declared him fit to return to duty on June 16, 2015. When Musleh tried to return to work, American Steamship told him he was not qualified to return because he had failed to obtain a Vessel Personnel and Designated Securities Duties certificate. Musleh never returned to work for American Steamship.

In September 2015, Musleh sued American Steamship, raising two maritime claims, one for unearned wages and one for maintenance and cure benefits. After discovery, the district court granted summary judgment to American Steamship and dismissed Musleh's complaint. *Musleh v. Am. Steamship Co.*, No. 15-cv-13252, 2017 WL 3966576, at *10 (E.D. Mich. Sept. 8, 2017). Musleh did not appeal. Approximately three months later, Musleh filed this lawsuit against American Steamship, now raising claims for Jones Act negligence, for unseaworthiness under general maritime law, and again for maintenance and cure benefits. American Steamship moved to dismiss Musleh's complaint, arguing that res judicata barred Musleh's claims because they all arose out of the same 2014 injury on which Musleh based his first lawsuit. The district court agreed and granted American Steamship's motion to dismiss, finding that the claims in both lawsuits arose "out of the same December 26, 2014 accident and injury and [Musleh] concedes that the claims asserted here could have been, and typically would have been, asserted" in his first action. *Musleh v. Am. Steamship Co.*, 326 F.Supp.3d 507, 521 (E.D. Mich. 2018). Musleh appealed.

## II.

We review de novo a dismissal based on res judicata. *Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006). Res judicata includes both issue preclusion and claim preclusion. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* Claim preclusion, which is at issue here, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.* A claim is barred if four elements are present: "(1) a final decision on the merits; (2) a subsequent action between the same parties or their privies;

(3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action." *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999).

Musleh meaningfully challenges only the fourth element—whether there was an identity of the causes of action in his two lawsuits.[1] This element "is satisfied if the claims arose out of the same transaction or series of transactions, or [if] the claims arose out of the same core of operative facts." *Browning v. Levy*, 283 F.3d 761, 773–74 (6th Cir. 2002) (quotation marks omitted); *see also United States v. Tohono O'Odham Nation*, 563 U.S. 307, 316 (2011) ("The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring claims arising from the same transaction." (quotation marks omitted)). "Where two successive suits seek recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978).

We turn first to Musleh's claims for unearned wages and for maintenance and cure benefits from his original lawsuit. Some explanation of those claims is necessary to show why they arose out of the same transaction as Musleh's claims in this lawsuit. This court has explained that "[r]ather than relying upon the protection of workers' compensation statutes, seamen who suffer illness or injury on the job look to a unique package of remedies." *Blainey v. Am. S.S. Co.*, 990 F.2d 885, 886 (6th Cir. 1993). Thus, "federal common law of the sea accords seamen special relief

---

[1] Musleh briefly discusses the third element of res judicata in his opening brief. He asserts that the third element "necessarily involves examining the fundamental purpose of res judicata," which he says "is to prevent relitigation of issues brought and previously decided by the Court." That is assuredly one of the purposes of the doctrine; that is the work of issue preclusion. But claim preclusion, at issue here, "foreclos[es] litigation of a matter *that never has been litigated*, because of a determination that it should have been advanced in an earlier suit." *Migra,* 465 U.S. at 77 n.1 (emphasis added).

not available to other workers, including maintenance, cure, and unearned wages." *Id.* at 887. We explained:

> Maintenance refers to a shipowner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill while in service of the ship, while cure alludes to the duty to provide necessary medical care and attention. A shipowner is liable to pay maintenance and cure to the point of maximum cure, that is, when the seaman's affliction is cured or declared to be permanent. Finally, a shipowner must also pay a stricken seaman's unearned wages at least so long as the voyage is continued.

*Id.* (citations and quotation marks omitted). These common law remedies "recognize[] the difficulty of a seaman's work, and protect[] injured mariners from being put ashore and abandoned in a foreign port." *Id.* At bottom, then, Musleh's prior claims for common law remedies of maintenance, cure, and unearned wages all stemmed from his December 2014 injury aboard American Steamship's vessel.

Not so, says Musleh. He contends that the claims in his first lawsuit arose out of American Steamship's refusal to allow him to return to work once he was deemed fit for duty, rather than out of the injury itself. In support, Musleh notes that he only sought unearned wages and maintenance and cure benefits from the day American Steamship refused to allow him to return to work forward. But we are not persuaded. The right to pursue unearned wages and maintenance and cure benefits belongs to seamen who, like Musleh, are injured or rendered ill on the job. *See Blainey*, 990 F.2d at 886–87. Musleh advanced novel arguments in his first lawsuit as to why those benefits should extend beyond their commonly understood end date. The district court rejected those arguments, determining that Musleh was entitled only to unearned wages until the end of the voyage, and maintenance and cure benefits until he was deemed fit for duty on June 16, 2015. *Musleh*, 2017 WL 3966576, at *6 n.2, *7. But regardless, his entitlement to any unearned

wages or maintenance and cure benefits flowed directly from his injury on American Steamship's vessel.

The same is true for the claims in this lawsuit. Musleh has raised a claim for Jones Act negligence, a claim for unseaworthiness under general maritime law, and another claim for maintenance and cure benefits. The Jones Act provides a cause of action to "[a] seaman injured in the course of employment." 46 U.S.C. § 30104; *see Braen v. Pfeifer Transp. Oil Co., Inc.*, 361 U.S. 129, 131 (1959) (recognizing that the Jones Act "supplement[s] the remedy of maintenance and cure by extending a right of recovery in trial by jury to a seaman injured while in the service of his vessel by negligence" (quotation marks omitted)). To prevail, a seaman must show that his "employer's negligence is the cause, in whole or in part, of his injuries." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 598 (6th Cir. 2001). Likewise, "[a] ship owner is strictly liable for personal injuries caused by his or her vessel's unseaworthiness," an unseaworthy vessel being one "not reasonably fit for [its] intended use." *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006) (quotation marks omitted). For Musleh to prevail on his unseaworthiness claim, he "must establish that [the] vessel's unseaworthy condition was the proximate cause of his . . . injuries." *Id.* And Musleh's third claim, a renewed claim for maintenance and cure benefits, rests on the same injury that formed the basis for the claim in his first lawsuit. *See Blainey*, 990 F.2d at 886–87.

Musleh's claims in this lawsuit all stem from the same event that gave rise to Musleh's first lawsuit—his 2014 injury. Because Musleh's claims all arose out of the same transaction or operative facts, there is an identity of the causes of action raised in both lawsuits, and the fourth element of claim preclusion is satisfied. *See Browning*, 283 F.3d at 773–74. Res judicata, therefore, bars Musleh's current claims.

\* \* \*

We AFFIRM the judgment in favor of American Steamship.

\* \* \*