NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0235n.06
Filed: March 30, 2005

No. 03-6551

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

HERITAGE MUTUAL INSURANCE
COMPANY,

     Plaintiff-Appellee,

v.

ROSEMARIE RECK,

     Defendant-Appellant, and

DOUGLAS W. DUQUETTE,

     Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

_____/

Before:     MARTIN, GILMAN, and FRIEDMAN[*], Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge. This appeal presents several issues relating to a

declaratory judgment action seeking a determination of liability under an automobile insurance

policy. For the following reasons, we **AFFIRM** the district court on each issue.

I.

     On May 20, 2000, Rosemarie Reck was driving a 1997 Toyota 4Runner leased by her

employer, Bic, Inc., westbound on I-275 in northern Kentucky. For an undetermined reason, Reck's

vehicle crossed over the median and into oncoming traffic, hitting the van driven by Douglas

_____

[*]The Honorable Daniel M. Friedman, United States Circuit Judge for the Federal Circuit,
sitting by designation.

Duquette. Reck apparently does not have a clear recollection of the accident, but claims that she has "a flash of a memory" of a tractor-trailer pulling steel or lumber coming into her lane and causing her to cross the median into oncoming traffic. Reck claims that the tractor-trailer did not stop after the accident. However, no witness, besides Reck, saw a tractor-trailer force Reck across the median.

The relevant portions of the Heritage Mutual insurance policy read:

> 1. Coverage
> a. Uninsured Motorists Coverage
> We will pay all sums the *insured* is legally entitled to recover as compensatory damages from the owner or driver of: . . .
> (2) An *uninsured motor vehicle* as defined in paragraph 6c(3) because of *bodily injury* sustained by an *insured*.
> . . .
> c. "*Uninsured motor vehicle*" means a land motor vehicle or *trailer*:
> . . .
>> (3) That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:
>>> (a) Hit an *insured*, a covered *auto* or a vehicle an *insured* is *occupying*; or
>>> (b) Cause *bodily injury* to an *insured* without hitting an *insured*, a covered *auto* or a vehicle an *insured* is *occupying*.
>> The facts of the *accident* or intentional act must be proven by independent corroborative evidence, other than the testimony of the *insured* making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

A brief summary of the relevant testimony follows. Jill and Michael Lonnemann were traveling eastbound on I-275 when the accident occurred. Jill Lonnemann ("Lonnemann"), who was a passenger in the car driven by her husband, Michael, saw Reck's 4Runner as it was in the middle lane, surrounded by a number of other vehicles. According to Lonnemann, the 4Runner was not doing anything unusual at this time. Lonnemann apparently looked away for a "second or two," and when she looked back, the 4Runner appeared to be changing lanes into the high speed lane.

Lonnemann testified that she then saw the 4Runner drive into the median, flip over on its hood, and slide across the lanes of oncoming traffic. Lonnemann testified that she did not see a tractor-trailer or anything else that could have made the driver of the 4Runner (Reck) drive into the median. She also testified that once the 4Runner was in the high speed lane, if the driver had turned the wheel a little to the right, the 4Runner would not have gone into the median.

Testimony from others, however, appears to support Reck's version of the accident. Detective Patrick Reis, the officer who completed the police report on the accident, testified that he concluded that alcohol was not a factor in the accident and that he could find nothing mechanically wrong with Reck's vehicle that could have caused her to lose control. He testified that the physical evidence he saw was consistent with Reck's vehicle coming into contact with a tractor-trailer or was consistent with some type of defensive maneuver, taken by Reck, to avoid a collision. Jerry Pigman, an accident reconstructionist, also provided a report stating that it was his opinion that "[t]he primary factor contributing to this accident was intrusion of a tractor trailer into the path of Ms. Reck's Toyota 4-Runner." Reck's father, Tom Reck, also testified that his daughter described the tractor-trailer and explained to him how the accident occurred soon after the accident while she was in the hospital.

On November 30, 2000, Heritage filed this action seeking a declaratory judgment to determine its liability under an automobile insurance policy entered into with Reck's employer, Bic, Inc. The complaint alleged that Reck caused the accident by crossing the median on I-275 and striking the oncoming vehicle driven by Duquette. Reck counter-claimed, arguing that she was insured under the Heritage insurance policy issued to her employer, Bic, Inc., and that she was

entitled to $2.3 million in uninsured motorist benefits under that policy.  Her uninsured motorist claim was based on her allegation that she was struck by an unidentified tractor-trailer, which forced her to cross the median and into the oncoming vehicle driven by Duquette.  Duquette brought a cross-claim against Reck, and Reck subsequently filed a claim against Duquette for contributing to the accident, and an amended counter-claim against Heritage alleging bad faith.

All three of the primary parties filed motions for summary judgment prior to trial.  On April 8, 2003, the court held that Reck produced "*some* admissible evidence corroborating her testimony, [but] not *conclusive* proof, to support her claims," and thus denied Heritage's motion for summary judgment.  The court, therefore, granted Reck's motion only in part, holding that the factual issues surrounding the automobile accident were to be submitted to a jury in a bifurcated trial.  Duquette's motion for summary judgment was denied as moot, as Reck had dismissed her cross-claim against Duquette on April 3, 2003.  The court, however, reserved the issue of whether Reck was entitled to an apportionment instruction against Duquette, giving Reck "thirty (30) days from [April 8, 2003,] to name an expert and file the expert's report on this issue."  On May 13, 2003, after the thirty days for filing the expert report had passed, the court entered an order granting Duquette's motion to reassert his motion for summary judgment and granting that motion for summary judgment "on the **apportionment issue as to <u>liability</u> only**, not on damages." (emphasis in original).  After a trial on liability, the jury returned a verdict in the form of interrogatory answers on May 21, 2003, finding that no unidentified motor vehicle contributed to causing the accident.  Duquette subsequently settled his claims against Reck.

On November 4, 2003, the court heard oral argument on Reck's counter-claim for bad faith. The court granted Heritage's motion for summary judgment, holding as a matter of law that Heritage conducted a prompt and reasonable investigation into Reck's claim.

On appeal, Reck raises four issues. First, she argues that the district court erred in denying her motion for summary judgment in her claim for insurance proceeds under the Heritage policy. Second, she alleges that the district court erred by granting Duquette's motion for summary judgment on the issue of his comparative negligence in causing the accident. Third, she argues that the district court should not have permitted Jill Lonnemann's testimony regarding whether Reck could have turned her steering wheel to avoid going into the median. Finally, Reck claims that the court erred by prematurely granting Heritage's motion for summary judgment on her bad faith claim.

II.

This Court reviews a grant of summary judgment de novo. *Miller v. Fid. Sec. Life Ins. Co.*, 294 F.3d 762, 764 (6th Cir. 2002). We review for an abuse of discretion both the district court's admission of lay opinion testimony, *JGR, Inc. v. Thomasville Furniture Indust., Inc.*, 370 F.3d 519, 524 (6th Cir. 2004), and its decision not to allow a party the opportunity to conduct additional discovery, *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004).

A.

Reck first claims that the district court erred in denying her motion for summary judgment under the uninsured motorist policy. The district court, applying Ohio law to interpret the requirements of the insurance policy at issue, held that, as a threshold matter, Reck was required to come forward with some additional evidence corroborating her testimony to survive Heritage's

motion for summary judgment. The court found that Reck had met this burden, and therefore denied Heritage's motion for summary judgment. However, the court expressly noted that its finding was "in no way meant to imply that Reck ha[d] conclusively proved her theory of the case. The factual issues surrounding the automobile accident [would still] have to be resolved by a jury."

On appeal, Reck essentially argues that the court should have granted her motion for summary judgment because she satisfied the requirement in the insurance contract that she supported her allegations with "additional evidence." This claim is without merit. Under the insurance policy, Heritage is only required to "pay all sums the insured is legally entitled to recover as compensatory damages." The district court's partial grant of Reck's motion for summary judgment was based on its finding that "[t]he factual issues surrounding the automobile accident [should] be resolved by a jury." Given the clear genuine issue of material fact here—that is, whether there was a hit-and-run tractor-trailer that contributed to the accident that would invoke coverage under the Heritage policy—full summary judgment for Reck was properly denied.

B.

Reck next claims that the district court erred in granting Duquette's motion for summary judgment on Reck's claim that Duquette was negligent in causing the accident. Reck's argument here is misguided because her claims with Duquette are not properly before this Court, as they have been settled or dismissed with prejudice. The district court initially found Duquette's motion for summary judgment moot after Reck voluntarily dismissed, with prejudice, her claims against Duquette on April 3, 2003. In the same order, the court expressly reserved the issue of whether Reck was entitled to an apportionment instruction against Duquette in her remaining suit with

Heritage, noting that Reck would have thirty days (from April 3, 2003) "to name an expert and file the expert's report on this issue." When Reck apparently failed to come forward with such evidence, the court granted Duquette's motion for summary judgment on May 13 on the apportionment issue as to the liability of the parties.

Reck now attempts to reassert her claim that Duquette was negligent in causing the accident, claiming that she should have been entitled to an apportionment instruction as to Duquette's comparative negligence. This argument is improper against Duquette, because Reck voluntarily dismissed, with prejudice, her negligence claims against Duquette, and Duquette's claims against Reck were settled. Moreover, any potential error committed by the district court in granting summary judgment to Duquette would be harmless as to Reck's present claims against Heritage because the jury expressly found no factual basis for Heritage to be liable under the uninsured policy. The only potential prejudice to Reck caused by the grant of Duquette's motion for summary judgment would be on her claims with Duquette, which have been settled or dismissed with prejudice. Thus, Reck's claim on this issue fails.

C.

Reck also claims on appeal that the district court abused its discretion by permitting testimony from Jill Lonnemann about what, in her opinion, Reck could have done to avoid the accident. Reck's claim is based on the following testimony on direct examination:

> Counsel for Heritage: Well, let's talk about [it] from this point. When [Reck] was – when she was in the high-speed lane, she had just moved over?
> Jill Lonnemann: Right.
> Counsel for Heritage: If she had turned the wheel a little bit to the right --
> Jill Lonnemann: Oh, yes.
> Counsel for Heritage: – would she have gone into the median?

| Jill Lonnemann: | No. |
|---|---|
| Counsel for Heritage: | If, once she got into the emergency lane, before she hit gravel or grass or anything, if she had turned the wheel a little bit to the right, do you think she could have avoided the median? |
| Jill Lonnemann: | Yes. |
| Counsel for Reck: | Your honor, that's speculation. She testified -- |
| The Court: | Well, that's something she could see and offer an opinion on. It's common driving. |
| Counsel for Reck: | Okay. Thank you, Your Honor. |
| The Court: | Overruled. |

Rule 701 of the Federal Rules of Evidence allows lay witnesses to testify about their opinions that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Reck claims that Lonnemann's testimony fails to meet any of these requirements. In our view, however, the district court did not abuse its discretion in allowing the testimony. First, while Lonnemann's testimony could be seen as somewhat speculative, we are convinced that she knew enough from firsthand knowledge to testify rationally as to whether Reck could have avoided the median, especially in light of the broad discretion generally afforded district courts in admitting lay opinion testimony.

Second, Lonnemann's testimony on this issue was helpful to the jury's determination of whether Reck's vehicle was knocked or forced towards the median by another vehicle. This Court has held that a witness's testimony is "helpful" where the witness's testimony goes beyond merely "address[ing] matters that were equally within the competence of the jurors to understand and decide." *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988); *accord United States v. Sheffey*, 57 F.3d 1419, 1428-29 (6th Cir. 1995) (concluding that lay witnesses could testify to whether they believed a defendant was driving recklessly and in extreme disregard for human life

based on their pre-accident observations). Here, Lonnemann was in a unique position to draw inferences from her evaluation of how Reck was driving before the accident and, thus, whether she could have avoided the median by turning the steering wheel to the right. Therefore, Lonnemann's testimony on this issue was properly considered "helpful" to the jury under Rule 701.

Finally, the testimony was not "based on scientific, technical or other specialized knowledge." "[A] person may testify as a lay witness . . . if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996). In the present case, we agree with the district court that Lonnemann could offer her opinion because it was based on "common driving." Thus, we hold that the district court was within its discretion to permit Lonnemann's challenged testimony.

D.

Reck's final claim on appeal is that the district court erred in granting Heritage's motion for summary judgment on Reck's claim of bad faith against Heritage. The district court, citing the Kentucky Supreme Court's decision in *Farmland Mutual Insurance Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2000), seemingly agreed with Reck that Heritage had an obligation under section 304.12-230 of the Kentucky Revised Statutes to investigate and settle Reck's claims in good faith, independent of whether Heritage was obligated to pay the claim under the terms of the policy. However, the court, in granting Heritage's motion for summary judgment, found that

> Heritage Mutual did, in fact, conduct a prompt and reasonable investigation into Reck's claim; that it hired an expert to review the evidence and opine as to the cause of the accident; that the report provided the insurer with a reasonable basis to dispute coverage; that the insurer took statements from witnesses that tended to undermine Reck's claim; and that the insurer nonetheless thereafter engaged in good faith efforts to settle the matter.

On appeal, Reck appears to claim that the district court erred by granting Heritage's motion for summary judgment and by failing to allow discovery on this issue since discovery was held in abeyance pending the outcome of the underlying claims. To the degree that Reck now claims that the district court erred in granting summary judgment, this Court reviews its decision de novo, viewing all facts and inferences drawn therefrom in the light most favorable to the non-moving party. *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1193 (6th Cir. 1995). In the present case, assuming that the district court was correct that *Johnson* created such a bad faith cause of action, we are convinced that summary judgment for Heritage was appropriate. There is no evidence in the record suggesting that Heritage failed to engage in a good faith investigation of Reck's claim. As the district court noted, the evidence indicates that Heritage conducted a thorough and reasonable review of Reck's insurance claim. Reck fails to offer any specific grounds for her vague allegations of bad faith. Therefore, we affirm the district court's grant of summary judgment on Reck's claim of bad faith.

To the extent that Reck complains that the district court prematurely granted summary judgment without permitting her to conduct discovery, we review for an abuse of discretion. *Plott*, 71 F.3d at 1196. In our view, the merits of the present case firmly support the timing of the district court's grant of summary judgment. Reck was given the opportunity to engage in discovery of the underlying issue of whether Heritage was liable under its uninsured automobile policy. In hearing this claim, the district court became familiar with facts sufficient to preclude a bad faith cause of action against Heritage. Thus, further discovery would not have changed the ruling below. *See, e.g., Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133, 138 (6th Cir. 1993) (affirming district court's

summary judgment where "vague" allegations that additional discovery may have disclosed undiscovered facts in the appellant's favor would not have affected the case's outcome and were thus insufficient to justify further discovery).

Furthermore, Reck fails to allege on appeal any specific discoverable information that could have created a genuine issue of material fact. This further supports the district court's decision to grant summary judgment without additional discovery. *See, e.g., Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997) ("[A] plaintiff complaining that a district court granted summary judgment without allowing adequate discovery must, at a minimum, be able to show that he could obtain information through discovery that would disclose material facts").

In sum, the district court did not err in granting summary judgment on this record, or in granting summary judgment without allowing Reck additional discovery on her claim of bad faith against Heritage.

III.

For the aforementioned reasons, we **AFFIRM** the district court on all contested issues presented in this appeal.