*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0370p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

VICTORIA HARRIS,

      *Plaintiff-Appellant,*

      *v.*

No. 09-1490

J.B. ROBINSON JEWELERS,

      *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 05-10294—Thomas L. Ludington, District Judge.

Decided and Filed:  December 8, 2010

Before:  GUY and GRIFFIN, Circuit Judges; BARZILAY, Judge.<sup>*</sup>

_____

**COUNSEL**

**ON BRIEF:** Peter D. Isakoff, WEIL, GOTSHAL & MANGES LLP, Washington, D.C., for Appellee.  Victoria Harris, Saginaw, Michigan, pro se.

      GRIFFIN, J., delivered the opinion of the court, in which BARZILAY, J., joined. GUY, J. (pp. 9–17), delivered a separate dissenting opinion.

_____

**OPINION**

_____

      GRIFFIN, Circuit Judge.  In her Complaint, plaintiff Victoria Harris asserts several claims against defendant J.B. Robinson Jewelers ("Robinson") based upon her allegation that when she brought her diamond wedding ring into defendant's store for resizing, her large, pink center diamond was replaced with a smaller, colorless stone.

---

      <sup>*</sup>The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

The district court granted summary judgment in favor of Robinson on the basis that plaintiff failed to submit any admissible evidence in support of her allegation that her center diamond had been replaced. Upon review, we conclude that the district court erred in its ruling because plaintiff submitted admissible documentary evidence creating a genuine issue of material fact regarding this issue. Accordingly, we reverse and remand for further proceedings. Our reversal is without prejudice to defendant's ability to renew its motion for summary judgment based upon other grounds.

I.

In July 1973, plaintiff's husband, Arthur Harris, purchased from defendant a diamond wedding ring for $395. According to plaintiff Victoria Harris, the ring contained several small stones and a pink center diamond. However, no written information regarding the size, quality, or color of the stones was provided by defendant at the time of purchase.

On August 5, 2002, Victoria Harris brought her ring into a Robinson store for resizing. When she returned to retrieve the ring on August 13, plaintiff asserted that the original center diamond had been replaced. Specifically, she claimed that the diamond then present in the setting was smaller and brighter than the original. Harris refused to take the ring home that day, and instead returned to the Robinson store on August 18 to further discuss her concerns. At this time, Harris asserted that the center diamond had been replaced yet again, this time with a "wider" and "flatter" stone. On November 12, 2002, Harris filed a police report alleging that her original "fancy" diamond was replaced by Robinson with a different stone. The word "fancy" is a term of art in the diamond industry, referring to a colored, as opposed to colorless, diamond.

Harris filed the present lawsuit in Saginaw County, Michigan, Circuit Court, asserting claims for breach of trust, breach of duty, embezzlement, larceny, conversion, damage to personal property, and civil theft. Defendant Robinson removed the action to the United States District Court for the Eastern District of Michigan based upon diversity of citizenship and an amount in controversy in excess of $75,000.

On May 9, 2008, Robinson moved for summary judgment on the grounds that the original diamond was returned. In support of its motion, Robinson relied in substantial part upon the expert opinion of Martin Fuller, a certified gem appraiser. Based upon his examination of the ring, Fuller opined that the colorless, .29 carat diamond currently mounted in Harris's ring is likely the original.

In opposing summary judgment, Harris submitted her deposition testimony regarding the alleged color and size of her original center diamond. In addition, Harris submitted affidavits of three witnesses: Essie Washington, Willie Washington, and Ann Marie Lewis Easley. Each of these witnesses swore, based upon personal knowledge, that Harris's original center diamond was pink in color.

This matter was referred to a magistrate judge, who recommended that the district court grant Robinson's motion for summary judgement. Specifically, the magistrate concluded that Harris had not submitted any admissible evidence supporting her allegation that her center diamond had been replaced. In so ruling, the magistrate held that the testimony offered by Harris regarding the color and appearance of the original center diamond was inadmissible opinion of a non-expert, lay witness.

On February 11, 2009, the district court adopted the magistrate's report and recommendation. In its written opinion, the district court agreed that Harris had failed to establish a genuine issue of material fact regarding the alleged diamond replacement, and that the testimony offered by Harris regarding the color and appearance of her original diamond was inadmissible lay opinion. Harris timely appealed.

## II.

We review *de novo* a district court's grant of summary judgment. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment

as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether the movant has met this burden, we must view the evidence in the light most favorable to the nonmoving party.  *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

All of Harris's claims rest upon the allegation that Robinson replaced her large, pink diamond with a smaller, colorless diamond.  Harris contends that the district court erred in granting summary judgment because the admissible record evidence establishes a genuine issue of material fact regarding whether plaintiff's original diamond was replaced.  Upon review, we agree.

In opposing summary judgment, Harris submitted her deposition testimony. When asked how she was able to discern that her center diamond had been replaced, she stated:  "It was not the same color.  It was not the same size.  It was nothing like the one I took into the store that I had for 29 years."  This testimony alone is sufficient to create a jury question regarding the alleged replacement. *See Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006) ("Plaintiff's testimony creates sufficient evidence to create a genuine issue of material facts[.]"); *see also Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005) ("[A] plaintiff's testimony may suffice to establish a genuine issue of material fact."); *Britton v. U.S.S. Great Lakes Fleet, Inc.*, 302 F.3d 812, 818 (8th Cir. 2002) ("[Plaintiff's] testimony alone created a genuine issue of material fact[.]").  Robinson also contends that Harris's testimony is "self-serving," and therefore should not be considered by the court.  We do not agree.  A court may not disregard evidence merely because it serves the interests of the party introducing it.  *See Niemi v. NHK Spring Co.*, 543 F.3d 294, 300 (6th Cir. 2008) ("[Plaintiff's] affidavit, albeit arguably self-serving, is not 'no evidence.'"); *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 513 (5th Cir. 1999) (reversed on other grounds) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient.").

Moreover, Harris's testimony was bolstered by the sworn affidavits of three witnesses.  Each of these witnesses contend, based upon personal observation, that Harris's original center diamond was pink in color.  There is no dispute that the diamond

presently mounted in Harris's ring is colorless.  Accordingly, this testimony, which must be viewed in the light most favorable to Harris, supports the allegation that Harris's diamond was replaced.[1]  Robinson contends that the district court erred in considering the affidavit of Ann Marie Lewis Easley because Harris failed to identify her "as an individual with knowledge during discovery."  However, as the magistrate noted, Easley was named on Harris's witness list.  Because Robinson was made aware of Easley prior to summary judgment, the district court did not abuse its discretion in failing to exclude her testimony.  *See Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 525 (6th Cir. 2005) (noting that an appellate court reviews a district court's decision regarding discovery sanctions for abuse of discretion, considering in part prejudice suffered as a result of alleged discovery violation).

In granting summary judgment in favor of Robinson, the district court held plaintiff's deposition testimony and the witness affidavits were inadmissible lay opinion under Rule 701 of the Federal Rules of Evidence.  Specifically, the district court held that testimony regarding the color of a diamond requires specialized knowledge possessed exclusively by experts in the field.  Evidentiary rulings are generally reviewed for an abuse of discretion.  *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006).  However, "'[i]n reviewing a trial court's evidentiary determinations, this court reviews *de novo* the court's conclusions of law and reviews for clear error the court's factual determinations that underpin its legal conclusions.'"  *Id.* (quoting *United States v. Baker*, 458 F.3d 513, 516 (6th Cir. 2006)).  "These standards are not in fact inconsistent, because it is an abuse of discretion to make errors of law or clear errors of factual determination."  *Id.* (internal quotation marks and citation omitted).

We hold that the district court erred in excluding the testimony of Harris and her lay witnesses.  Fed. R. Evid. 701 provides:

---

[1]In addition to the testimony described above, Harris offered the expert report of Arthur DeMello and several photographs in opposition to summary judgment.  The report is not sworn, nor is it made under penalty of perjury.  Accordingly, it cannot be considered on summary judgment.  *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment.").  With regard to the photographs, the quality of the images is too poor for them to be probative regarding the facts at issue here.

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

In distinguishing proper lay testimony from expert testimony, this court has specified that "lay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (internal quotation marks and citation omitted). Thus, a lay witness may testify, for example, that "a footprint in snow looked like someone had slipped, or that a substance appeared to be blood[,]" but cannot testify that "skull trauma caused the bruises on a victim's face." *Id.* (internal quotation marks and citation omitted). In applying Rule 701, "the modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *United States v. Valdez-Reyes*, 165 F. App'x 387, 392 (6th Cir. 2006) (unpublished) (internal quotation marks and citation omitted).

Here, the testimony offered by Harris regarding the perceived color of her original center diamond is not "based on scientific, technical, or other specialized knowledge." Rather, this testimony is based upon "a process of reasoning familiar in everyday life," i.e., the observation and recognition of color.

In holding Harris's proffered witness testimony to be improper lay opinion, the district court noted that an "opinion regarding the color of the diamond necessitates a conclusion that the ring contained a pink diamond, which evaluates the quality of the gem." However, the testimony submitted by Harris was not offered to prove damages or the *quality* of her original diamond, nor to prove that the stone was truly "pink," as the term is used in the diamond industry. Instead, the evidence was submitted in support of plaintiff's allegation that the diamond she left with Robinson was not returned.

The recognition of color is well within the realm of ordinary experience to which a lay witness may testify.[2]  Indeed:

> The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences.

*Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1196 (3d Cir. 1995).

This court has previously acknowledged a lay witness's ability to identify objects based upon personal observation. *See*, *e.g.*, *United States v. Strickler*, No. 92-5217, 978 F.2d 1260, 1992 WL 310267, at *1 (6th Cir. Oct. 26, 1992) (unpublished table opinion) (lay witness may testify that substance was marijuana).  Indeed, this court has allowed lay testimony on matters decidedly more specialized and technical than the recognition of color.  *See*, *e.g.*, *United States v. Madison*, 226 F. App'x 535, 543-44 (6th Cir. 2007) (unpublished) (lay witness may testify, based upon review of financial records, as to whether appropriate funds were available to make a down payment); *Heritage Mut. Ins. Co. v. Reck*, 127 F. App'x 194, 199-200 (6th Cir. 2005) (unpublished) (affirming admission of lay testimony regarding whether an automobile collision was preventable); *United States v. Smith*, 437 F.2d 538, 540 (6th Cir. 1970) ("[L]ay testimony may, at least under some circumstances, serve to create an issue of fact for the jury as to a defendant's criminal responsibility.").  In addition, our sister circuits have recognized that lay witnesses may testify regarding matters open to the senses.  *See*, *e.g.*, *Rushing*, 185 F.3d at 512 (reversing district court's exclusion of lay witness testimony regarding the level of perceived sound); *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 847-48 (10th Cir.

---

[2] According to Robinson, "[c]ourts routinely hold that opinions concerning diamonds in general, and colored diamonds in particular, call for specialized skill and expertise."  However, the cases cited by Robinson do not support the proposition for which they are cited.  Instead, they merely establish that experts *may* be utilized to establish facts regarding diamonds. *See New Olde Vill. Jewelers, Inc. v. Outlet Commc'ns, Inc.*, No. 98-4407, 202 F.3d 269, 2000 WL 64942, at *3-5 (6th Cir. Jan. 14, 2000) (unpublished table opinion) (summarizing expert testimony admitted by trial court regarding diamonds); *U.S. Diamond & Gold v. Julias Klein Diamonds LLC*, No. C-3-06-371, 2008 WL 4116090, at *6 (S.D. Ohio Aug. 28, 2008) (unpublished) (certifying expert to testify regarding value of pink diamond); *Reid v. Moskovitz*, 208 Cal. App. 3d 29, 30-31 (Cal. Ct. App. 1989) (summarizing expert testimony admitted at trial regarding value of diamond).  These cases do not address whether lay witnesses may testify regarding the readily observable appearance of a diamond.

1979) ("There is uniformity among the courts that the testimony of witnesses . . . is admissible if predicated upon concrete facts within their own observation and recollection that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts."); *Burchill v. Kearney-Nat'l Corp., Inc.*, 468 F.2d 384, 386 (3d Cir. 1972) (reversing district court decision excluding lay witness testimony identifying substance as rust); *Aetna Life Ins. Co. of Hartford, Conn. v. Kelley*, 70 F.2d 589, 593 (8th Cir. 1934) (internal quotation marks and citation omitted) (holding that a non-expert may testify to matters that are "open to the senses").

## III.

In conclusion, because the deposition testimony of Harris and the affidavits of her three lay witnesses constitute admissible evidence supporting the claim of diamond replacement, we hold that there is sufficient evidence to create a genuine issue of material fact regarding this issue. For this reason, we reverse the ruling of the district court granting summary judgment in favor of defendant and remand for further proceedings consistent with this opinion.[3]

---

[3]We express no opinion on other potential grounds for summary judgment that may be raised on remand.

———————————

**DISSENT**

———————————

RALPH B. GUY, JR., dissenting.  I respectfully dissent.  In *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the Supreme Court stated that on appellate review a summary judgment should be upheld "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  This is the quintessential example of such a case.

Although in my view plaintiff's *pro se* claims are nothing short of preposterous, that is not the test.  A "judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [plaintiff] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  It is the application of this standard that informs my dissent.

According to plaintiff, in 1973, her husband, in her presence, purchased for $395 a gold wedding ring which she now alleges contained a 2.35 carat pink diamond.  The original sales slip for this purchase is part of the record.  There is no indication on the sales slip as to size or color of the diamond nor did the salesmen make any representations about the diamond.[1]

On August 5, 2002, some 29 years later, plaintiff took the ring to a Robinson Jewelers for sizing.  When she returned on August 13, 2002, to pick up the ring, plaintiff complained that the ring did not contain its original diamond claiming that the diamond now in the ring was "too small" and that it "sparkled," "splattered," and "glittered" too much.  Nothing was said about the original diamond being pink.  Plaintiff refused to take the ring home, but returned on August 18, 2002.  On this date plaintiff now complained that the diamond had been switched again and was not the same diamond that was in the

———————————————————

[1]The name of the jewelers from whom the diamond was purchased was Hatfield Jewelers. Plaintiff's complaint refers to J.B. Robinson Jewelers, and defendant refers to itself as Sterling Jewelers indicating J.B. Robinson is a trade name of Sterling Jewelers.  There is no dispute, however, that all three are interrelated and defendant does not question that J.B. Robinson is a properly named defendant.  For ease of reference the defendant will be referred to as "Robinson."

ring on August 13.  On both occasions plaintiff was informed that all rings brought in for work are cleaned by machine which restores their original sparkle.  This time, plaintiff left with the ring, again not making any reference to a pink diamond.

Later in 2002, the plaintiff contacted the Attorney General's office, the local police, and an attorney, none of whom pursued this matter.  In the initial report to the police, plaintiff mentioned nothing about a pink diamond, but two-and-a-half years later, in 2005, she submitted an "update" to the police, and for the first time mentioned the diamond was pink.  Two months later she filed this *pro se* complaint in a Michigan state court alleging that a 2.35 carat, pink diamond had been taken from her ring and replaced with a smaller white stone.  Defendant removed the case to a federal court, where after referral to a magistrate judge, summary judgment was granted to defendant and this *pro se* appeal followed.

## I.

Although I disagree with the majority's analysis of the evidentiary issues, even if plaintiff's "evidence" is deemed admissible she still cannot prevail.  By focusing only on the evidentiary rulings, the court misses the overarching principle of what is necessary for a plaintiff to defeat a well-pleaded motion for summary judgment.  In the district court the defendant's motion for summary judgment framed the issue as whether taking the record as a whole, any "rational trier of fact could find for plaintiff . . . ."  An examination of the record taken as a whole demonstrates that no rational juror could make such a finding.

The first document in the record is plaintiff's complaint.  Although some leeway is given to *pro se* pleadings, the rambling lengthy narrative filed by plaintiff is long on emotion but short on plausibility.  The allegation that a large national jeweler would have sold her a rare, pink 2.35 carat diamond for $395.00, which the complaint says is now worth something between $440,000 and $800,000 per carat, sets a tone for the complaint which makes what follows largely irrelevant.  Although this was not a Fed. R. Civ. P. Rule 12(b)(6) motion filed by the defendant, the relatively recent decisions by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft*

*v. Iqbal*, 129 S. Ct. 1937 (2009), make it clear that there must be pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In the companion case of *Iqbal*, Justice Kennedy wrote that judges must use their "judicial experience and common sense" in determining plausibility. *Iqbal*, 129 S. Ct. at 1950. Although *Trombly* and *Iqbal* were decided under the more rigorous standard for dismissal of Rule 12(b)(6), the principle articulated certainly permeates summary judgment proceedings unless the more fully developed record would take the plaintiff across the plausibility threshold. With that in mind, an examination of what the record does show is enlightening.

To begin with, and certainly very damaging to plaintiff's claims, is that her husband, who purchased the ring and saw it regularly for 29 years states that it looks like the same ring he originally purchased.

Second, the ring itself belies plaintiff's claim. In her complaint she states; "I read the inscription [in the ring] many times 235 (carat # - her insertion) 14k (gold - her insertion) 'Starfire' the name of my pink diamond." Unfortunately for plaintiff the ring inscription is 235—not 2.35—and "Starfire" is descriptive of a diamond that "sparkled" and "glittered," exactly the characteristics that plaintiff says her original diamond did not have. More importantly, however, defendant's expert, Martin Fuller, who examined plaintiff's ring, provides the full and unrefuted provenance of the ring in question. Mr. Fuller's credentials are not only very impressive as a general matter, but significantly, some are directly relevant to this case. We learn from Mr. Fuller, *inter alia*, the following:

A.     Plaintiff's ring is a standard "Carioca" ring manufactured by Keepsake Jewelers as part of its Starfire line. This is a line of small diamonds mass marketed to the lower end of the diamond-ring market. The suggested selling price for this line of diamonds was $350 to $750. The diamond currently in plaintiff's ring shows that it was cut consistent with diamond cutting practices of 1973 and was the type of diamond mounted in Starfire rings of that era. In addition to his expertise, Mr. Fuller from 1970 through 1974 sold Keepsake rings, including rings from the Starfire line.

**B.**     The stone currently in plaintiffs ring reveals that it was cut manually, which was the standard process used in the 1970s.  Today diamonds are cut by computer-driven machines, and the diamond allegedly substituted into plaintiff's ring was not produced by the more modern procedure.

**C.**     A 2.35 carat diamond would have a diameter more than twice the size of the one in plaintiff's ring.  The "head" or "crown" (prongs) of plaintiff's ring could not accommodate a 2.35 carat diamond.  Additionally, a 2.35 carat diamond would have been of a size that would have obscured the small diamonds and rubies which bracketed the principal diamond.

**D.**     To remove and replace a diamond in plaintiff's ring would have required the use of a torch and resoldering.  The rubies would have to have been removed to protect them from the heat of the torch, and the white gold scrolling which holds the rubies and small diamonds in place would have been damaged.

**E.**     The head of plaintiff's ring is original and has never been changed. Plaintiff makes no claim that the ring itself is other than the original.

**F.**     A 2.35 carat natural fancy pink diamond would be a rarity in today's market and would have been even more uncommon in 1973.

**G.**     Colored diamonds are valued according to their modifying colors and subtle differences in color can have a great impact on value.  That is why so-called pink diamonds are classified as Fancy Light Pink, Fancy Intense Pink, Fancy Vivid Pink, and Fancy Dark Pink.  Since the ring that plaintiff purchased was covered by a warranty, the sales slip would have had to list more particulars about the nature of the diamond purchased if it was other than the garden variety, small diamond used in the Keepsake line of rings.

**H.**     The "235" inscription in plaintiff's ring is a reference to a style number.

Fuller's report actually contains many other facts damaging to plaintiff's allegations, but the above represents some of his most compelling findings.  Also, it is

important to note that Mr. Fuller was not given a hypothetical and then opined, as is often the case with experts, but rather he was "hands on" and his conclusions are derived from his observations of plaintiff's ring, buttressed by his many years of experience with this exact type of ring.

Against this tsunami of expert evidence, what has plaintiff offered? The nature and quality of plaintiff's evidence is exemplified by the following excerpt from her deposition:

> Q.     Can you - What I'm looking for here is the name of anyone who would have seen you with that ring on. Can you think of any names of people who would have seen you with that ring?
>
> A.     I really don't right now.
>
> Q.     As you sit here today can you think of one person who saw this ring prior to the time that you dropped it off at J.B. Robinson?
>
> A.     Who had seen it years back or whatever?
>
> Q.     At any point from the time that you acquired it to the time that you dropped it off at J.B. Robinson. As you sit here today can you think of one person?
>
> A.     Well, my – It should be my relatives. I have – Let me check. Could I check that and bring that in to you?
>
> Q.     Sure.
>
> Q.     We would – Sterling would request that you supplement your Responses today to the extent necessary and, specifically, request the name of any individual to whom you showed this ring prior to the time that you dropped it off at J.B. Robinson.
>
> A.     Now, I don't know exactly about showing – well, okay.
>
> Q.     Any person who saw this ring prior to the time that you dropped it off at J.B. Robinson.
>
> A.     All right. I'm sure I can find some people that probably had seen it at some point in time prior. Okay.
>     Now, I'm hoping this is all on here so I can go back and then I can say, okay, I need to get this for you.

Plaintiff did not supply any names as she promised and defendant filed interrogatories seeking the same information. Specifically, the plaintiff was asked to identify "any person who saw the diamond ring referenced in your complaint between the time it was given to you and August, 2002." Two months elapsed and then plaintiff's only reply was to object to the interrogatories and provide no additional information. When plaintiff finally responded she stated, under oath: "Plaintiff was not able to locate any person at this time many are deceased."

Apparently recognizing that in 30-plus years someone must have noticed this allegedly huge pink ring, plaintiff submitted three affidavits which are essentially what the majority rely upon in reversing the summary judgment granted by the district court. The two affidavits each of Essie and Willie Washington are identical in their language and barren in detail. The first two Washington affidavits are dated November 18, 2005, and are handwritten, obviously by the same hand. They read in their entirety: "the diamond in the ring is not the same diamond, it is different from the one that she brought [sic], it was a pink diamond." Apparently recognizing the complete inadequacy of these affidavits, plaintiff had the Washingtons sign two other identical affidavits dated July 18, 2008, which was shortly after defendant filed its motion for summary judgment. In their entirety, these affidavits stated:

1.   Her ring was a Pink Diamond Ring.
2.   I had picture with her and the Ring.
3.   The dress and Stone both was Pink.
4.   At the end of July the both was here in Rockford Ill. with picture and the Ring.
5.   I have had the picture in Rockford in 1973 - July or Aug.

Whether the language is not artful by design or otherwise, the key fact is that their sworn allegations are made on the basis of an alleged photo of the ring, not the ring itself. Although a claim is made that the Washingtons actually saw the ring, that fact cannot be ascertained from their affidavits.

The third affidavit, that of AnnMarie L. Easley, is, at least, in proper affidavit form and purports to set forth some basis for the observation of the affiant. The

magistrate judge and the district judge appropriately did not consider this affidavit for procedural reasons. As set forth above, although defendant made repeated efforts to compel plaintiff to identify anyone who might have seen the ring that she intended to rely upon in support of her claim, as can be seen, plaintiff identified no one. Although she was named on plaintiff's witness list, she was never identified as a person who could testify about the nature and color of the ring even though she was a bridesmaid at plaintiff's wedding. In the same vein, although Easley is not offered specifically as an expert, her affidavit suggests she is one by referring to herself as a "jewelry aficionado." Plaintiff actually did consult an expert, but elected not to use him and, in fact, attempted to disqualify him.

Even if, despite the failure of plaintiff to respond to clear and unambiguous discovery requests, one were to consider the affidavit of Easley, what of evidentiary significance does it say? Other than saying that plaintiff and her husband are nice folks, the only relevant thing the affidavit contains is her statement that sometime in the 80's she looked at plaintiff's ring—in her words:

> to determine if I could see a pool (watery) effect at the bottom of her stone. By moving closer to the garage (better lighting), I remember for a fact, that the diamond was the same one that she was married in. It was blush (pinkish) colored and eye clean. The stone was a non brilliant cut like a cabochon.

There are several problems with these statements. First, although a self-styled "jewelry aficionado" she clearly would not qualify as an expert, at least on the basis of what is in the record. Yet as the magistrate and the district judge both noted, getting into the grading of diamonds and talking about trying to see a pool at the bottom of the diamond and stating it was a "non brilliant cut like a cabochon" goes far beyond what the rules contemplate relative to the admissibility of lay witness opinion testimony.

What is significant about the Easley affidavit is what it does not say—particularly that she has seen the ring plaintiff now has and knows it is not the ring she had at her wedding. Certainly, this "jewelry aficionado" would be the one plaintiff would turn to for that comparison. Nor does she say anything that would support the

diamond being 2.35 carats in size. The one incident that Easley's affidavit recites that relates to color was that on one occasion two decades ago, the stone appeared to have a "blush (pinkish)" cast to it. This viewing was apparently at night since the affidavit states to see the ring she "moved closer to the garage (better lighting)."

Even if one gives full credit to the Easley affidavit, it must be read in light of the testimony by the accredited expert—Fuller. This does not require a weighing or otherwise-impermissible evaluation of the record. If a plaintiff's complaint and a supporting witness's affidavit state that the moon is made of green cheese and an affidavit by Neil Armstrong says that it is not, there has not been a fact question created that would make it error to grant a summary judgment. The analysis is the same as that which would be made at the conclusion of a trial if the judge was considering a motion for judgment as a matter of law. In a summary judgment setting, the nonmoving party must go beyond the pleading and

> by affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial. Thus, the nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its complaint to defeat the motion for summary judgment.

*Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-340 (6th Cir. 1993) (internal quotation marks and citations omitted).

There is no probative evidence in this case that would support a finding that in 1973 plaintiff purchased a 2.35 carat, rare pink diamond for the $395.00, now claimed to have a value of hundreds of thousands of dollars. There is even less to support the claim that whatever ring she brought in, regardless of the nature of the diamond, had been altered and another diamond substituted. As was stated in *Anderson v. Liberty Lobby, Inc.*, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

I would affirm the summary judgment.